**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**December 2, 2003**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 02-21008
_____

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

                        versus

SAUL SERNA-VILLARREAL,

                                        Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

Before JOLLY and WIENER, Circuit Judges, and ROSENTHAL, District
Judge.[*]

E. GRADY JOLLY, Circuit Judge:

     Saul Serna-Villarreal, a previously deported Mexican citizen,

was convicted of being found in the United States after having re-

entered without the permission of the Attorney General in violation

of 8 U.S.C. § 1326.  This appeal presents issues relating to the

government's overlooking Serna's presence in state jails, his

reindictment, and dates as to when he was "found" in the United

States.  Serna contends that (1) the district court erred in

denying his motion to dismiss the indictment on speedy trial

_____

     [*]District Judge of the District Court of the Southern District
of Texas, sitting by designation.

grounds; and (2) the evidence offered at trial was insufficient to support his conviction. We disagree with both contentions and therefore AFFIRM Serna's conviction.

I

Serna legally entered the United States in 1979 and obtained permanent resident status in 1990. In 1993, he was convicted of burglary of a habitation and sentenced to eight years on each of three counts, which he served concurrently. Upon completion of his sentence, Serna was deported from the United States at Brownsville, Texas on July 19, 1996.

Serna illegally re-entered the United States sometime in August of 1996 through Brownsville, Texas. He obtained a Texas driver's license on August 21, 1996, and took up residence in Houston. At some point, the Houston Police Department ("HPD") learned that Serna was in Houston and began investigating him for the contract murder of an HPD officer. On January 24, 1998, an undercover informant working for the HPD photographed Serna at a Houston club. On July 31, 1998, INS agent Carlos Gonzales created a "Report of Investigation" on Serna detailing his criminal history and immigration status. The report stated that "as of August 21, 1996, [Serna] list[s] his address as 1118 King St., Houston, Texas 77022." It further stated that the current INS investigation of Serna was "predicated upon information received from Houston Police Officer, U.P. Hernandez, . . . indicating that Serna-Villarreal [had] once again reentered the United States after [having been]

2

deported . . . ."

On August 21, 1998, a federal grand jury indicted Serna for having been "found present in the United States, at Houston, Texas" "[o]n or about January 24, 1998" in violation of §§ 1326 (a) and (b)(2). Three days later, the HPD arrested Serna on a state arrest warrant. On February 23, 1999, approximately six months after his arrest, an INS agent interviewed Serna in state prison but did not notice that he had a federal charge pending against him. The government thus failed to pursue the indictment against Serna until February 2002, when the state paroled him into federal custody and INS officials for the first time connected him to the August 21, 1998 federal indictment. Serna made his initial appearance in federal court on March 5, 2002. One month later, the government filed a superseding indictment against him, charging him with "having been found in Huntsville, Texas" "[o]n or about February 23, 1999," the date on which he was interviewed by the INS in state prison.

Serna moved to dismiss the indictment for violation of his federal constitutional right to a speedy trial on May 23, 2002. At a pretrial conference held on the record, the district court denied Serna's motion. Although the court did not orally assign reasons for its determination, the record indicates that its decision was made after consideration of the Supreme Court's decision in United States v. Doggett, 505 U.S. 647 (1992), and this Court's own

3

precedent in <u>United States v. Bergfeld</u>, 280 F.3d 486 (5th Cir. 2002).

On June 11, 2002, one week after the pretrial conference, the district court held a bench trial on stipulated facts. At that trial, Serna stipulated to the following set of facts: (1) that he was a citizen of Mexico; (2) that he was deported in 1996 following his conviction and sentence for burglary; (3) that he was "encountered at" the Texas Department of Criminal Justice on February 23, 1999, (4) that a record search revealed no evidence of his filing for re-admission to the United States; and (5) that a fingerprint analysis matched his fingerprints to those on the warrant of deportation and conviction. Serna also introduced three exhibits which the district court admitted into evidence without objection: (1) a time line of events produced by his attorney, (2) an undated letter from INS agent Carlos Gonzalez to an Assistant United States Attorney referred to only as "Mr. Peck," and (3) a letter from Gonzalez to "AUSA" dated July 27, 1998. At the time of the introduction of the exhibits, Serna's counsel explicitly represented to the court that the exhibits were "not going to be relevant in the trial" but were related to an earlier motion of an unclear nature[1] made by Serna which the judge had denied. In

_____

[1]Serna's counsel referred to it as a "motion to suppress." However, an examination of the record does not disclose any prior motions to suppress filed by Serna or addressed by the district court. Thus, it is unclear exactly what the precise nature of this earlier motion was.

4

admitting the exhibits, the district court noted that it was for the purposes of preserving the record for "appellate rights" i.e. in case Serna decided to appeal this denial of the earlier motion.

After briefly examining the evidence and the joint stipulation of facts, the district court found Serna guilty on the charge as stated in the superceding indictment. Serna was sentenced to serve fifty-seven months in the custody of the Bureau of Prisons and a three-year term of supervised release. The court denied Serna's request for a downward departure based upon the time served for his state conviction. Serna timely appealed. He now argues that his conviction should be reversed on one of two grounds. First, he contends that the district court erred in denying his motion to dismiss his indictment on speedy trial grounds. Second, he asserts that, in any event, the evidence submitted at trial was insufficient to support his conviction.

II

A

As we have noted, Serna first was indicted in August of 1998; the government, however, did not begin to pursue this indictment until March or April of 2002.[2] Serna argues that this three-year and eight- or nine-month delay constitutes a violation of his Sixth

_____

[2]As noted earlier, Serna was ultimately charged under a superceding indictment, which was identical to the first indictment in all respects except that the date Serna was alleged to have been found in the United States was February 23, 1999, as opposed to the original indictment's specified date of January 24, 1998.

Amendment right to a speedy trial.

In describing how the right to a speedy trial is protected by the Constitution, the Supreme Court has held that the dismissal of the indictment may be warranted where the right is violated. Barker v. Wingo, 407 U.S. 514, 522 (1972). The right attaches when a person is arrested, indicted or otherwise charged. Doggett v. United States, 505 U.S. at 655. To determine whether a defendant's right to a speedy trial has been denied so as to justify the dismissal of the indictment, a court must evaluate and balance four factors: "(1) the length of the delay, (2) the reason for the delay, (3) the defendant's diligence in asserting his Sixth Amendment right, and (4) prejudice to the defendant resulting from the delay." United States v. Cardona, 302 F.3d 494, 496 (5th Cir. 2002)(citing Barker v. Wingo, 407 U.S. at 530-33). This Court reviews a district court's findings in applying the elements of this balancing test for clear error. Bergfeld, 280 F.3d at 488.

The Supreme Court has most recently elaborated upon these four speedy trial factors in Doggett. There, the Court noted that the first factor -- the length of the delay -- is a "triggering mechanism" for determining whether the court is required to balance the remaining three Barker factors. Id. at 651; see Robinson v. Whitley, 2 F.3d 562, 568 (5th Cir. 1993). Although the Doggett Court did not specify a length that would suffice per se, it observed that the lower courts had generally found a one-year delay sufficient to warrant judicial examination of the claim. Doggett,

505 U.S. at 652 n.1. This rule is followed by our circuit as well. Bergfeld, 280 F.3d at 488. Here, both sides concede that the delay between indictment and appearance in court exceeded one year; accordingly, it is clear that we must engage in a Barker balancing. See Robinson, 2 F.3d at 568 (noting that once a court determines that the length of the delay is sufficiently long to trigger the full-scale Barker analysis, "it must make findings regarding the remaining three factors and balance all accordingly").

In applying a Barker balancing, the court must weigh the first three Barker factors -- length of the delay, reason for the delay, and defendant's diligence in asserting his right -- against any prejudice suffered by the defendant due to the delay in prosecution. See id. at 570. Obviously, in this balancing, the less prejudice a defendant experiences, the less likely it is that a denial of a speedy trial right will be found. Ordinarily, the burden of demonstrating such prejudice rests on the defendant. Id. Doggett noted, however, that a defendant can be relieved from bearing this burden in circumstances where the first three Barker factors weigh so heavily in favor of the defendant that prejudice is to be presumed. Id. (citing Doggett, 505 U.S. at 655). In such cases, the defendant is relieved of the burden of proving actual prejudice and will receive relief unless the government shows that the presumption is extenuated, as by the defendant's acquiescence in the delay, or rebuts the presumption with evidence. Doggett, 505 U.S. at 658. In this appeal, Serna's foremost contention is

7

that the Barker factors weigh so heavily in his favor, he is entitled to a presumption of prejudice and thus, need not demonstrate actual prejudice. He also asserts, in the alternative, that even if he is not entitled to presumed prejudice, he is able to demonstrate a degree of prejudice sufficient to tip the weight of the Barker balance decisively in his favor. For the reasons below, we reject both contentions.

B

1

We turn first to an examination of whether Serna has demonstrated actual prejudice to him as a result of the three-year and nine-month delay. Serna contends that the post-indictment delay prejudiced him in two ways: (1) it deprived him of the opportunity to serve his prior state sentence and federal sentence concurrently; and (2) it allowed the government to file a superseding indictment against him and convict him of a charge that occurred at a time and place different from the one charged in the original indictment, which the government could apparently no longer prove.[3] Notably, Serna made no such contentions related to actual prejudice in the district court, asserting them for the first time on appeal. As such, these arguments are reviewed for

_____

[3]The Sixth Amendment's Speedy Trial Clause is concerned with three types of prejudice: (1) "oppressive pretrial incarceration," (2) "anxiety and concern of the accused," and (3) "the possibility that the [accused's] defense will be impaired by dimming memories and loss of exculpatory evidence." Doggett, 505 U.S. at 654. Serna's evidence relates to this third category.

"plain error." United States v. Torrez, 40 F.3d 84, 86 (5th Cir. 1994). To prevail under this standard, Serna must show that there is (1) an error, (2) that is plain, and (3) that affects substantial rights. Id. Once this showing is made, this Court may then exercise its discretion to notice the error, but only if "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Cotton, 535 U.S. 625, 631-32 (2002).

Applying this standard, we do not find plain error here. Assuming that the district court's failure to consider these arguments, sua sponte, constituted an "error," neither argument is "obvious" or "plain." Further, it can hardly be said that these alleged "errors" seriously affected the integrity of the proceedings below. Certainly, neither of the "errors" weakens the compelling evidence of his guilt. Nor do the "errors" adversely affect his ability to defend himself against the charges. In short, Serna's argument that he experienced actual prejudice as a result of the post-indictment delay is unconvincing. The corollary of this conclusion is that no weight in Serna's favor should be accorded to the factor of actual prejudice in the Barker balancing test.

2

Because Serna is unable to demonstrate actual prejudice, the success of his claim turns on whether a presumption of prejudice applies here. Serna apparently recognizes this fact, as the bulk

9

of his argument on appeal is devoted to the contention that he is entitled to this presumption. Specifically, he argues that the three-year and nine-month delay, coupled with the government's negligence and his own diligent assertion of speedy trial rights, warrants a finding of presumed prejudice. We disagree.

When we consider the length of the delay in this case, we first look to our own speedy trial precedent, which indicates that the delay in the instant case is too short to weigh heavily in favor of a finding of presumed prejudice. Indeed, this Court and others generally have found presumed prejudice only in cases in which the post-indictment delay lasted at least five years. See, e.g., Doggett, 505 U.S. at 658 (finding presumed prejudice after a government-caused delay of six years); Bergfeld, 280 F.3d at 489-91 (finding presumed prejudice after a delay of five years and three months but noting that, "[h]ad the delay been considerably shorter, [the defendant] might well have been properly required to demonstrate prejudice"); United States v. Cardona, 302 F.3d 494, 499 (5th Cir. 2002)(finding presumed prejudice after a delay of five and one-half years); United States v. Brown, 169 F.3d 344, 350 (6th Cir. 1999)(finding presumed prejudice after a five and one-half year delay); United States v. Shell, 974 F.2d 1035, 1036 (9th Cir. 1992)(finding presumed prejudice after a six-year delay). In the instant case, the delay between indictment and trial was, at most, only three years and nine months, considerably less than the delay in the cases cited above. And, if this Court considers only

10

the period between the time of the indictment and the time that the government began diligently to pursue the charge, the delay shortens to three years and six months. Accordingly, the length of delay factor of the Barker balancing test does not weigh heavily in Serna's favor.

In addressing the reason for the delay, the Supreme Court has held that if the government diligently pursues a defendant from indictment to arrest, prejudice will never be presumed. Doggett, 505 U.S. at 656 ("if the Government had pursued [the defendant] with reasonable diligence from his indictment to his arrest, his speedy trial claim would fail . . . so long as Doggett could not show specific prejudice to his defense"). In contrast, if the government acts in bad faith, i.e., intentionally holds back in its prosecution of the defendant to gain some impermissible advantage at trial, the delay will weigh heavily in favor of the defendant. Id. If a case involves neither diligent prosecution nor bad faith delay but instead official negligence, the case occupies a "middle ground" where the weight assigned to the factor increases as the length of the delay increases. Id. at 656-57. A court's "toleration of such negligence varies inversely with its protractedness." Id. at 657.

The facts of this case indicate that it occupies this middle ground. Although there is no suggestion of bad faith, the government nevertheless concedes that for at least a three-year

11

period, its failure to pursue the indictment was due to negligence on its part.[4]  Thus the determining question is what weight should be assigned this factor of government negligence in the light of the length of this period of delay.

After considering this question, we cannot conclude that the length of the delay here automatically requires dismissal of the indictment.  First, we note that the period of delay in the instant case is shorter than that in other cases where courts have found presumed prejudice.  All of the cases cited during our foregoing discussion of the length of the delay involved official negligence.  As indicated there, all of them involved significantly longer periods of delay than are present here.[5]  Second, Doggett justified its inverse variance rule on the grounds that the longer the delay, the greater the likelihood of evidentiary prejudice and its consequent threat to the fairness of a trial.  Id.  There is no indication from this record that either the government's negligence

_____

[4]The government maintains that it was not negligent in failing to pursue the charges against Serna during the period from the time of the original indictment (August of 1998) to the February 23, 1999 interview.  The government concedes, however, that it was at fault in failing to connect Serna to the 1998 indictment during the February 23, 1999 interview.  Thus, both parties agree that the government's negligence is responsible for, at the very least, the failure to pursue the indictment during the period from the February 23, 1999 interview until February 2002, when Serna was paroled into state custody and the government connected him to the 1998 indictment -- a three year period.

[5]The portion of the post-indictment delay attributable to government negligence in Doggett, Bergfeld, and Cardona, was six years, five years, and five years, respectively.

12

or the resulting length of the delay here adversely affected the evidence so as to undermine the fairness of a trial. In short, this case is not one entitled to a presumption of prejudice.

Thus, having concluded that we cannot presume prejudice and that Serna has failed to make a showing actual prejudice, we AFFIRM the district court's decision to deny his motion to dismiss his indictment on speedy trial grounds.

III

Serna also contends that his conviction for violating 8 U.S.C. § 1326(a) should be reversed because the evidence submitted at trial was insufficient to support it. To establish a violation of § 1326(a) here, the government must prove that the defendant (1) is an alien (2) who has been previously arrested and deported or excluded and deported and thereafter (3) is found in the United States without the permission of the Attorney General. 8 U.S.C. § 1326(a).

Serna does not contest the fact that the evidence at trial indicated he was an alien, that he had been arrested and deported and had subsequently reentered the United States without the permission of the Attorney General. His argument is simply that the government's evidence was insufficient to support a conclusion that he was <u>found</u> on the date alleged in the indictment. Serna points out that under our previous cases, "a previously deported alien is 'found in' the United States when his physical presence is discovered and noted by the immigration authorities, and the

13

knowledge of the illegality of his presence, through the exercise of diligence typical of law enforcement authorities, can be reasonably attributed to the immigration authorities." United States v. Santana-Castellano, 74 F.3d 593, 598 (5th Cir. 1996). He argues that if this standard is applied to the evidence before the district court in this case, it necessarily follows that he was found not in February of 1999, as alleged in the indictment, but instead he was found in July or August of 1998.[6] Thus, his conviction should be reversed as resting on insufficient facts. While we acknowledge that Serna states the correct legal principle, we disagree that the principle requires the reversal of his conviction in this case. To the contrary, applying this principle to the record evidence introduced, we believe that the evidence compelled a finding by the trial court that Serna was found in the United States on February 23, 1999.

We note first the proper standard of review. This Court reviews a district court's finding of guilt after a bench trial to determine whether it is supported by "any substantial evidence." United States v. Shelton, 325 F.3d 553, 557 (5th Cir. 2003). Evidence is sufficient to sustain a conviction if any rational trier of fact could have found that the evidence established guilt

---

[6]Serna argues that the Report of Investigation prepared by the INS on July 31, 1998 demonstrates that the INS was aware of his illegal presence in the United States as of that time. He contends that this is the date on which he was "found," not the later date alleged in the indictment.

14

beyond a reasonable doubt. Id. In conducting this inquiry, this Court examines the evidence as a whole and construes it in the light most favorable to the verdict. Id. Thus, to prevail, Serna must show that the district court's conclusion that Serna was found in the United States on February 23, 1999 was one that no rational trier of fact could have reached.

In support of his argument, Serna points to our decision in United States v. Herrera-Ochoa, 245 F.3d 495 (5th Cir. 2001). There, following a bench trial, the defendant was also convicted of violating § 1326. On appeal, the defendant argued that his conviction should be reversed on the grounds that there was insufficient evidence to show he had been found in the United States on the date alleged in the indictment. After examining the record, this Court agreed with the defendant, finding that the government (in an apparent oversight) had failed to introduce any evidence that the defendant was found on the date alleged in the indictment. This court then reversed the defendant's conviction.

Herrera-Ochoa is obviously distinguishable from the present case, however. In Herrera-Ochoa, there was no evidence in the record substantiating the date on which the defendant was found; here, there was evidence clearly before the district court showing that Serna was found in the United States on February 23, 1999, the date alleged in the indictment. Ironically, this evidence came in the form of Serna's own explicit admission. Before trial, the parties agreed to a joint stipulation of facts. (The trial here

15

was very brief, indeed; it hardly consisted of more than this joint stipulation of facts.)  One of the facts stipulated was "[t]hat on February 23, 1999, defendant was encountered at the Texas Department of Criminal Justice . . . in Huntsville, Texas . . . ."  Thus, unlike the conviction in Herrera Ochoa, the conviction here rests on precise evidence before the district court at trial. Furthermore, it is significant to note that this joint stipulation was the only evidence admitted at trial relevant to the issue of when Serna was found.[7]  Given this fact, it can hardly be said that the district court's conclusion that Serna was found on February 23, 1999 was not reasonably supported by the evidence before it. To be certain, this conclusion was the only one that the district court could have reasonably drawn from that evidence.

In sum, there was sufficient evidence to support the district court's conclusion that Serna was found in the United States on February 23, 1999.  We therefore AFFIRM his conviction.

IV

Having found that (1) the district court properly concluded

---

[7]The items of evidence Serna points to as demonstrating he was found in the United States on a prior date -- in particular, the INS Report of Investigation -- while in the record, were not introduced before the district court for purposes of trial.  By his counsel's statement before the district court, these documents were placed in the record after the court received the joint stipulation of facts and for the sole purpose of preserving an appeal of an earlier "motion to suppress."  Indeed, at the time Serna moved to place these documents in the record, his counsel unambiguously stated that they were "not going to be relevant in the trial", i.e., as to guilt or innocence.  Serna cannot be permitted to repudiate his earlier representations to the district court.

that the government did not violate Serna's speedy trial right and (2) the evidence before the district court at trial was sufficient to support Serna's conviction, the district court's denial of Serna's motion to dismiss the indictment and Serna's conviction are therefore

AFFIRMED.