**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 27, 2009

Charles R. Fulbruge III
Clerk

No. 08-10167

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

JUAN CESAR MOLINA-SOLORIO

Defendant-Appellant

Appeals from the United States District Court
for the Northern District of Texas

Before KING, STEWART and SOUTHWICK, Circuit Judges.

CARL E. STEWART, Circuit Judge:

In 1997, defendant-appellant Juan Cesar Molina-Solorio was charged by indictment with escaping from federal custody. He was arrested on that charge in 2007 and shortly thereafter filed a motion to dismiss, arguing, *inter alia*, a violation of his constitutional right to speedy trial. The district judge denied the motion, and Molina-Solorio pled guilty while reserving the right to appeal the district court's denial of the motion. For the following reasons, we VACATE and REMAND.

I. FACTUAL AND PROCEDURAL HISTORY

In 1997, Molina-Solorio was convicted in the Southern District of West Virginia for conspiracy to possess with intent to distribute marijuana. He was

sentenced to twenty-one months of imprisonment and incarcerated at the Big Spring Prison Camp in Big Spring, Texas. On September 28, 1997, Molina-Solorio escaped. The following month, a federal grand jury returned an indictment against him for escape from federal custody in violation of 18 U.S.C. § 751(a).

In 1999, the Texas Department of Public Safety apprehended Molina-Solorio, and he was subsequently sentenced to three years of state imprisonment for possession of cocaine. After Molina-Solorio served his sentence, state authorities released him to Immigration and Customs Enforcement (ICE) authorities, who deported him to Mexico on February 24, 2001. The Government concedes that, at the time of his release into ICE custody, the federal authorities knew of the federal warrant against Molina-Solorio for his escape.

In December 2006, ICE apprehended Molina-Solorio in Laredo, Texas. In July 2007, he was sentenced to fifty-one months of federal imprisonment for illegal reentry of a deported alien in violation of 8 U.S.C. § 1326. Shortly thereafter, he was arrested on the escape charge, and in September 2007, he appeared before the magistrate judge for his arraignment on the escape charge. On November 9, 2007, approximately two months after his arraignment, Molina-Solorio moved to dismiss the escape indictment, alleging, *inter alia*, statutory and constitutional speedy trial violations. The Government responded that the court should deny Molina-Solorio's motion to dismiss because, while the length of delay was presumptively prejudicial, he had not asserted his right to a speedy trial, nor alleged malicious governmental intent to prevent him from being brought to trial, and because Molina-Solorio could not prove actual prejudice as a result of the delay. The district court denied the motion to dismiss "for the reasons set forth in the Government's Response."

Molina-Solorio then conditionally pled guilty to the indictment, specifically reserving the right to appeal the district court's denial of his motion to dismiss.

At sentencing, he reurged his motion, stating that there was prejudice due to the delay, arguing that his mandatory guideline range in 2001 would have been eighteen to twenty-four months instead of the twenty-four to thirty months with which he was faced. The district court sentenced him to thirty months imprisonment, followed by a three-year term of supervised release. Molina-Solorio appeals.

## II. DISCUSSION

### A. Standard of Review

In evaluating the district court's conclusion that there was no violation of Molina-Solorio's constitutional right to a speedy trial, we review findings of fact for clear error. *United States v. Frye*, 372 F.3d 729, 735 (5th Cir. 2004). Surprisingly, still unsettled in this circuit is the proper standard for reviewing the district court's application of the four-factor balancing test from *Barker v. Wingo*, 407 U.S. 514 (1972). *See, e.g., United States v. Parker*, 505 F.3d 323, 328 (5th Cir. 2007) ("The *Barker* factors are reviewed either *de novo* or for clear error."). Because we conclude that, unlike in prior cases, the standard of review affects the outcome of this appeal, we must decide which one applies. Although it is the court, and not the parties, that determines the appropriate standard of review, *United States v. Vontsteen*, 950 F.2d 1086, 1091 (5th Cir. 1992) (en banc), we note that neither party provides a strong argument regarding what deference, if any, the district court's balancing of the *Barker* factors merits. The Government states that "[l]egal conclusions are reviewed either *de novo* or for clear error," echoing our unsettled standard. In contrast, Molina-Solorio relies on *Parker* for the proposition that this court reviews *de novo* the legal conclusion that a Sixth Amendment right to a speedy trial was not violated. However, *Parker*, 505 F.3d 328, expressly observed the unresolved status of our review of the *Barker* factors.

In *Frye*, after describing the differing statements this court has made in regard to review of the *Barker* factors, we suggested why *de novo* review would likely apply:

> [W]e note that, generally, a district court's balancing of factors, resulting in a decision, are akin to, if not, conclusions of law, or at least rulings on mixed questions of fact and law, reviewed *de novo*. *E.g., United States v. Soape*, 169 F.3d 257, 267 (5th Cir.) (claim that denial of subpoena requests violated Sixth Amendment right to compulsory process reviewed *de novo*), *cert. denied*, 527 U.S. 1011 (1999). Accordingly, it is arguable that plenary review should be given a Sixth Amendment speedy trial decision.

372 F.3d at 735-36.[1] Although *Frye* continued that, on the other hand, this decision is fact-specific, we note the court reviews fact-finding for clear error. *Id.* We agree with the *Frye* court that application of the *Barker* test is at least a mixed question of fact and law, and we hold that the appropriate standard of review of the district court's application of the *Barker* factors is *de novo*. *Accord United States v. Knight*, 562 F.3d 1314, 1321 (11th Cir. 2009) ("We review de novo the denial of a motion to dismiss for a violation of the right to a speedy trial under the Sixth Amendment."); *United States v. Arceo*, 535 F.3d 679, 684 (7th Cir. 2008) (reviewing a constitutional speedy trial claim *de novo* and the district court's factual findings for clear error); *United States v. Sutcliffe*, 505 F.3d 944, 956 (9th Cir. 2007) (same); *United States v. Brown*, 498 F.3d 523, 530 (6th Cir. 2007) (same); *United States v. Aldaco*, 477 F.3d 1008, 1016 (8th Cir. 2007) (same).

B. Constitutional Right to a Speedy Trial

***Sixth Amendment and the* Barker *Factors***[2]

---

[1] The *Frye* court, like several others, ultimately concluded that it need not resolve the question because the result would be the same under either standard of review. 372 F.3d at 736; *also Parker*, 505 F.3d at 328 (same).

[2] Although most cases that this court has decided regarding the Sixth Amendment right to speedy trial have also implicated the Speedy Trial Act, 18 U.S.C. § 3161, Molina-Solorio did

The Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. CONST. amend. VI. The only remedy for a violation of the right is dismissal of the indictment. *Barker*, 407 U.S. at 522. A court evaluates a claimed violation of the constitutional right to a speedy trial by application of a four-factor balancing test: (1) "length of delay," (2) "the reason for the delay," (3) "the defendant's assertion of his right," and (4) "prejudice to the defendant." *Id.* at 530. The court balances the factors by "weigh[ing] the first three *Barker* factors . . . against any prejudice suffered by the defendant due to the delay in prosecution. Obviously, in this balancing, the less prejudice a defendant experiences, the less likely it is that a denial of a speedy trial right will be found." *United States v. Serna-Villarreal*, 352 F.3d 225, 230–31 (5th Cir. 2003) (internal citations omitted).

When more than one year has passed between indictment and trial, "this court undertakes a full *Barker* analysis, looking to the first three factors to decide whether prejudice will be presumed." *Parker*, 505 F.3d at 328 (internal citations omitted). The delay of nearly ten years in the present case unquestionably triggers this court's review of the remaining *Barker* factors.

Molina-Solorio argues that the lengthy delay, combined with the Government's negligence and his timely assertion of his rights, warrants a finding of presumed prejudice. We agree.

### *Length of Delay*

After determining that the length of delay is presumptively prejudicial, we consider it again "as one factor among several." *Doggett v. United States*, 505 U.S. 647, 652 (1992). The longer the delay between indictment and trial extends

---

not argue a Speedy Trial Act claim on appeal. "[A] claim under the Speedy Trial Act differs in some significant ways from a claim under the [S]ixth [A]mendment speedy trial clause." *Frye*, 372 F.3d at 734 (quoting *United States v. Mehrmanesh*, 652 F.2d 766, 769 (9th Cir. 1981)).

beyond the bare minimum, the heavier this factor weighs in a defendant's favor because "the presumption that pretrial delay has prejudiced the accused intensifies over time." *Id.* In the present case, both parties agree that the first factor weighs in Molina-Solorio's favor. We find it to weigh heavily in Molina-Solorio's favor because the delay was nearly ten years, the last eight of which occurred after Molina-Solorio had been back in state and federal custody. *See United States v. Bergfeld*, 280 F.3d 486, 489 (5th Cir. 2002) (noting that a delay of over five years weighs "heavily" in defendant's favor); *United States v. Cardona*, 302 F.3d 494, 497 (5th Cir. 2002) (finding first factor, an "extraordinary delay of over five years," to weigh heavily in defendant's favor).

### *Reason for the Delay*

Under the second factor, "pretrial delay is often both inevitable and wholly justifiable." *Doggett*, 505 U.S. at 656. Courts should "attach great weight" to considerations such as "time to collect witnesses against the accused, oppose his pretrial motions, or, if he goes into hiding, track him down." *Id.* Prejudice will never be presumed where the Government has "pursued [the defendant] with reasonable diligence from his indictment to his arrest." *Id.* Conversely, where the Government acts in bad faith, delaying prosecution in order to gain an "impermissible advantage at trial, the delay will weigh heavily in favor of the defendant." *Serena-Villarreal*, 352 F.3d at 232. However, this case falls in the "middle ground" that exists "between diligent prosecution and bad faith delay and demonstrates negligent prosecution." *Parker*, 505 F.3d at 329. "While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him." *Doggett*, 505 U.S. at 657. In middle ground cases, "the weight assigned to the factor increases as the length of the delay increases." *Serna-Villarreal*, 352 F.3d at 232.

Molina-Solorio does not allege that the Government engaged in bad faith, but the Government admits that it cannot show diligent pursuit of Molina-Solorio. As the Supreme Court noted in *Doggett*: "Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." 505 U.S. at 657. In *Doggett*, the defendant's "lag" between indictment and arrest was 8.5 years, and thus the "portion of delay attributable to the Government's negligence far exceed[ed] the threshold needed to state a speedy trial claim." *Id.* at 657–58. Similarly, the authorities' negligence in pursuing Molina-Solorio lasted over eight years. This second factor also weighs heavily in Molina-Solorio's favor.

***Assertion of Right***

Under the third factor, the "defendant's assertion of his speedy trial right" receives "strong evidentiary weight," while "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker*, 407 U.S. at 531–32. This court has noted that "mere assertion" of the right does not automatically cause this factor to weigh in a defendant's favor, and a defendant who waits too long to assert his right will have his silence weighed against him. *E.g., Parker*, 505 F.3d at 329–330 (weighing third factor against defendant when he waited until eight months after indictment to first give an indication that he wished trial to proceed). This court assesses the totality of the proceedings in considering the amount of time that passed before a defendant should have raised his speedy trial rights. *See id.* at 330 (waiting total of fourteen months, despite awareness of indictment, before affirmatively asserting constitutional right to speedy trial weighed against defendant).

In this case, this factor presents a close issue. Molina-Solorio argues that he asserted his speedy trial right in 1999, when he told authorities that he had

7

escaped from federal prison in 1997. Molina-Solorio does not cite, and we cannot find, any case finding such an assertion sufficient to clearly invoke the right to a speedy trial. However, there is no evidence in the record that Molina-Solorio was aware of the charges pending against him such that he would have been in a position to affirmatively ask the authorities about a federal trial in 1999. While he likely could have surmised that, as a fugitive, he would be brought to justice once apprehended, the law does not require Molina-Solorio to assume the existence of, and ask for a speedy trial on, a charge he is not actually aware of.

Instead, we find factor three satisfied by Molina-Solorio's 2007 motion to dismiss the indictment, because the record does not show that Molina-Solorio knew of the escape charge before his 2007 arrest. Although we have said that "[a] motion for dismissal is not evidence that the defendant wants to be tried promptly," *Frye*, 489 F.3d at 212, that was in the context of a defendant aware of the pending charges and still waiting to make an affirmative request that trial go forward. In contrast, the Supreme Court ruled in *Doggett* that the defendant should "not [ ] be taxed for invoking his speedy trial right only after his arrest," where the evidence showed that he was not aware, prior to his arrest, of the charges pending against him. *Doggett*, 505 U.S. at 653. In this case, Molina-Solorio similarly should not be "taxed" for invoking his speedy trial after his arrest because he did not know of the indictment pending against him. In contrast to the defendant in *Doggett*, who presented trial testimony about his lack of knowledge that went unrebutted by the Government, Molina-Solorio entered a conditional guilty plea and thus did not have a trial in which witnesses testified that he was not aware of the indictment against him.

This court has previously construed a lack of evidence regarding when a defendant knew of his indictment in favor of the defendant. In *Cardona*, this court reasoned that "[t]here [was] no evidence that [the defendant] knew of the charges against him until his arrest" and "thus this factor weigh[ed] heavily in

[the defendant]'s favor." 302 F.3d at 498. In that case, the defendant had not specifically been questioned at trial about when he learned that he had been indicted. *Id.* at 498 n.2; *see also Bergfeld*, 280 F.3d at 490 (ruling that the third factor weighed in defendant's favor because he only learned about the indictment against him after his arrest). Molina-Solorio's motion to dismiss is sufficient to satisfy factor three because, similar to the defendant in *Cardona*, the record contains no evidence that he was aware of the indictment against him. The Government has not presented any evidence that Molina-Solorio was aware of his indictment prior to late summer 2007 when he was arrested and arraigned on it. He moved to dismiss soon after his arraignment on the charge.

Therefore, we find that Molina-Solorio has sufficiently established that he asserted his rights, and this factor weighs in Molina-Solorio's favor.

### Prejudice

The fourth factor is the prejudice suffered by the defendant due to the delay, and ordinarily the burden is on the defendant to demonstrate actual prejudice. *Serna-Villarreal*, 352 F.3d at 230–31. But where the first three factors together weigh heavily in the defendant's favor, we may conclude that they warrant a presumption of prejudice, relieving the defendant of his burden. *Id.* Although factor three does not weigh as heavily as it did in prior cases that have found a constitutional speedy trial right violation, the lengthy delay caused by the Government's negligence weighs more heavily than that factor has in our prior cases. The reason for the delay, Government negligence, also weighs heavily in Molina's favor due to the "protractedness of the delay." Bearing in mind that the *Barker* inquiry is "a difficult and sensitive balancing process," and a constitutional deprivation may be found without mechanical factor-counting, *Nelson v. Hargett*, 989 F.2d 847, 851 (5th Cir. 1993) (quoting *Barker*, 407 U.S. at 533) (internal quotation marks omitted), we conclude that together the first three *Barker* factors weigh heavily in Molina-Solorio's favor, and he is relieved

of the burden of demonstrating actual prejudice.[3] *See Cardona*, 302 F.3d at 498-99.

Even with such presumption, the Government may still prevail if the presumption of prejudice is "extenuated, as by the defendant's acquiescence" or "persuasively rebutted." *Id.* at 499 (quoting *Doggett*, 505 U.S. at 658) (internal quotation marks omitted). Neither is the case here. First, Molina-Solorio did not acquiesce because, as discussed above, he asserted his rights once he was aware of the pending charge. Second, the Government has not persuasively rebutted the presumption of prejudice, although it does argue in rebuttal of Molina-Solorio's attempts to demonstrate actual prejudice. *Doggett* speaks directly to the point: "While the Government ably counters Doggett's efforts to demonstrate particularized trial prejudice, it has not, and probably could not have, affirmatively proved that the delay left his ability to defend himself unimpaired." 505 U.S. at 654 n.4 (citing H. Richard Uviller, Barker v. Wingo*: Speedy Trial Gets a Fast Shuffle*, 72 COLUM. L. REV. 1376, 1394-1395 (1972)).[4]

---

[3] Molina-Solorio does argue that he suffered prejudice, but because we determine that the fourth *Barker* factor should be presumed, it is unnecessary for us to determine whether he would sufficiently establish that factor independently.

[4] Indeed, the article cited by the Supreme Court discusses how, at an egregious length of delay, prejudice should be presumed and the burden shifted to the state to prove the negative by affirmatively demonstrating that there was no prejudice to defendant as a result of the delay. Uviller, 72 COLUM. L. REV. at 1394. Although the burden shift might require the state to prove facts inaccessible to it, e.g., that no evidence for the defense was lost or impaired, *id.*, that is the point:

> Realistically, prejudice lies beyond the capacity of either side to prove or disprove, except in the rare instance where a known defense witness of known competence actually disappears or reports a recent impairment of memory, and no prior testimony from him is available. Therefore, the shift of burden actually permits the presumption of prejudice to prevail on the issue. Since that presumption is well-founded, however, justice is served.

*Id.* at 1394-95. The presumption of prejudice moves the court from focusing on the defendant and to instead "merely focus[ing] attention on other elements wherein impropriety or justification may be more meaningfully discerned." *Id.* at 1395. This provides persuasive

Because we determine that the first three factors combine to weigh heavily in Molina-Solorio's favor, excusing Molina-Solorio of the need to demonstrate actual prejudice, and the Government has not persuasively rebutted that presumption of prejudice, *see Cardona*, 302 F.3d at 499, we hold that the pretrial delay violated Molina-Solorio's Sixth Amendment right to a speedy trial. "[T]he only possible remedy[,]" despite its severity, is dismissal of the indictment. *Barker*, 407 U.S. at 521.

## III. CONCLUSION

For the foregoing reasons, we vacate the judgment of conviction and remand with instructions to dismiss the indictment.

---

guidance as to how we should give effect to the Supreme Court's phrase "persuasively rebutted." Even with the generous reading of its brief, to say that the Government has met its burden in this case would be to rob the *Doggett* presumption of any efficacy.

KING, Circuit Judge, dissenting:

I respectfully dissent from the court's decision to vacate the judgment of conviction and remand with instructions to dismiss the indictment. In my view, the government has successfully rebutted Molina-Solorio's presumed prejudice.

I agree with the majority that prejudice may be presumed here. First, the egregious length of delay in this case—nearly ten years—both triggers the four-factor analysis from *Barker v. Wingo*, 407 U.S. 514 (1972), and weighs significantly in Molina-Solorio's favor. Second, the reason for delay probably results from government negligence, although it is hard to describe as "negligent" what may have been an affirmative decision not to prosecute Molina-Solorio but to deport him instead. Third, Molina-Solorio should not be "taxed" for not knowing of his indictment (and not asserting his desire for a speedy trial) until he was arrested. *Doggett v. United States*, 505 U.S. 647, 654 (1992); *see also United States v. Cardona*, 302 F.3d 494, 498 (5th Cir. 2002).

My primary disagreement with the majority is that the government has rebutted the presumption of prejudice by showing that Molina-Solorio has suffered no actual prejudice and thus no Sixth Amendment speedy trial violation. In *Doggett*, the Supreme Court stated that the defendant is not entitled to relief "when the presumption of prejudice . . . is . . . *persuasively rebutted*." 505 U.S. at 658 (emphasis added, internal footnotes omitted, and citation omitted). Though the government's brief does not denominate its argument as a "rebuttal" of presumptive prejudice, it argues persuasively that the delay in bringing Molina-Solorio to trial does not implicate the three key interests that "the speedy trial right was designed to protect": (1) "to prevent oppressive pretrial incarceration"; (2) "to minimize anxiety and concern of the accused"; and (3) "to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. Regarding the "most serious" of the three interests, Molina-Solorio does not even argue that his defense was impaired, nor could he.

12

*Id*. He makes no claim that his ability to defend against the charge specified in the indictment—specifically, escaping from the Big Spring Prison Camp—has been impaired by the amount of time that elapsed after the indictment. As for the other two interests, again, neither is even claimed by Molina-Solorio to have been infringed. Molina-Solorio's primary assertion—that had he been incarcerated for escape, he might not have committed the subsequent crimes of possession of a controlled substance (cocaine) and illegal reentry and would not have been charged with the resulting criminal history points—not only fails to demonstrate prejudice; it is, as the government says, "preposterous." His second assertion—that Texas "might have been willing to run his state sentence of three years imprisonment for possession of a controlled substance . . . concurrent or partially concurrent with his federal charge of escape"—is pure speculation.

There is no reason, grounded in the Sixth Amendment or otherwise, why Molina-Solorio ought not to go to prison for escape.