# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 28, 2025

Lyle W. Cayce
Clerk

No. 23-20590

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

HEZRON BENJAMIN STUART,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CR-495-1

Before SMITH, CLEMENT, and DUNCAN, *Circuit Judges*.
JERRY E. SMITH, *Circuit Judge*:

I.

On May 18, 2019, Hezron Stuart robbed a Houston Corner Store gas station; on May 23, he robbed a Citgo gas station. He was armed both times. A grand jury indicted him on two counts of Hobbs Act robbery under 18 U.S.C. § 1951(a) and two counts of using, carrying, possessing, and brandishing a firearm during and in relation to a crime of violence under § 924(c)(1)(A).

Awaiting trial in 2020, Stuart strangled a female prison officer for four

No. 23-20590

minutes during a bathroom trip. Prison staff discovered her unconscious and Stuart with a sharp object in his hand. He said to the rescuing officers, "In the year 2020, you're going to remember Stuart; I'm going to kill somebody." A grand jury indicted him for that assault.

In February 2023, a month before trial, the case was transferred to Chief Judge Crane of the Southern District of Texas, who consolidated the 2019 indictment for the robberies and gun offenses with the 2020 indictment for assault of the prison officer.

The case was again transferred, this time to Judge Rosenthal, and trial began on March 13, 2023. After swearing in the jury, the court gave general instructions. It emphasized that "[s]tatements, arguments, and questions by lawyers are not evidence" and that "[o]pening statements are neither evidence nor arguments." It also instructed the jury about the charges that Stuart was facing, including, as Stuart complains, the 2020 charge for the prison assault.

The government delivered its opening statement. Previewing how it had identified Stuart as the robber, it alluded to a May 7, 2019, "occurrence" where Stuart fired the same gun that was used in the charged robberies. It then discussed the 2020 prison-assault charge: "He assaulted a guard. . . . He wrapped a telephone cord around her neck where she thought she was going to die. There was a pair of medical scissors used to cut her neck."

Stuart, proceeding *pro se* with an attorney on standby, delivered his own opening statement. Among other things, he questioned how the government had identified him as the May 7 shooter and, thus, the May 18 and 23 armed robber: "[H]ow is it that . . . on May 7th there was a family violence and shots was fired[?] How is it that you find the shell for a bullet casing or shell in an apartment complex parking lot and place it on Mr. Stuart?"

The first witness was Prajwal Kayastha, the Citgo store clerk on the

night of the May 23 robbery. Aided by video surveillance, Kayastha testified that Stuart came into the store,

> was aggressively coming towards me and . . . was pushing me, hitting me in my head using the gun. And I was repeatedly telling him, "Get out of the store right now. Get out of the store right now." But he didn't stop.

Kayastha tried to grab Stuart's gun. At some point the gun's slide came off. Stuart grabbed the store's weapon and shot Kayastha multiple times, causing him to lose "more than 80 percent of [his] lungs." Stuart disputed several times that the video surveillance depicted him as the shooter.

The jury also heard from Abdul Kareem, the Corner Store cashier on the morning of the May 18 robbery. He narrated the video surveillance of the robbery and identified Stuart as the robber. Facing state felony charges for aggravated assault and attempted kidnapping, Kareem was wearing an orange jumpsuit. The prosecution established that he was facing felony charges but did not elicit the specific charges. On cross examination, Stuart questioned Kareem's identification and asked whether Kareem was receiving or hoping to receive "favors" from the federal government in exchange for his testimony. But the district court forbade Stuart from asking about Kareem's specific state charges of assault and kidnapping.

The gun used in the robberies of the Corner Store and Citgo was the same as the one used in a domestic assault on May 7. The government thus sought to identify Stuart as the robber by showing that he was also the May 7 perpetrator. Because Stuart contested that he committed that assault, the district court allowed two witnesses to describe the incident in detail. Haley Ivey, the daughter of Stuart's girlfriend, told the jury that, during an argument, Stuart chased her out of their apartment and shot at her from the rooftop. A responding officer also testified that he collected a shell casing from the scene, which, other testimony established, matched the gun used in

No. 23-20590

the robberies.

Toward the end of trial, but before either side had introduced evidence of the 2020 prison assault, the court severed the prison-assault charge, believing that it was "unduly prejudicial" to the "charges that are at the heart of this case, the Hobbs Act charges." It proposed declaring a mistrial on the alleged assault, severing it from the case, and proceeding only on the Hobbs Act robbery and gun counts. Stuart agreed. The court instructed the jury to "disregard any mention of an alleged assault" and not to let it "affect your judgment in any way."

## II.

We review the admission of evidence under Federal Rule of Evidence 404(b) for an abuse of discretion; "review is necessarily heightened in criminal cases." *United States v. Peterson*, 244 F.3d 385, 392 (5th Cir. 2001) (cleaned up).

Reviewing a claim of error not presented to the district court, we ask "whether the district court (1) committed an 'error,' (2) that is 'plain,' and (3) that affects 'substantial rights.'" *United States v. Pittsinger*, 874 F.3d 446, 451 (5th Cir. 2017) (cleaned up).

We review *de novo* whether a defendant's Sixth Amendment confrontation right was violated. *United States v. Skelton*, 514 F.3d 433, 438 (5th Cir. 2008). "In determining whether a defendant's Sixth Amendment right to a speedy trial was violated," we "review the district court's weighing of the [relevant] factors *de novo* and its underlying factual findings for clear error." *United States v. Scully*, 951 F.3d 656, 669 (5th Cir. 2020).

## III.
### A.

Stuart contends that the district court improperly admitted the

testimony of Officer Joseph Bravo and Haley Ivey, who testified about a May 7, 2019, assault that Stuart committed.

Bravo testified that, on May 7, he responded to a report of shots fired. He found an 18-year-old woman, Ivey, hiding under a Tahoe in the apartment complex's parking lot "to escape who was shooting at her." As Bravo walked her back to her building, she pointed to the rooftop where Stuart "was shooting at her from." Bravo recovered a shell casing "on the ground below the rooftop." Other testimony established that the shell casing matched the gun from the May 18 and 23 robberies. The court instructed the jury to consider the testimony only for Stuart's state of mind or intent or whether he had committed the charged offenses by accident or mistake.

Ivey then testified about the same incident. Her mother was Stuart's live-in girlfriend. In the middle of an argument with Stuart in their shared apartment, Ivey ran outside to the parking lot. Stuart went onto the apartment complex's roof, and they continued to argue. She heard a gun go off, then hid under a car until police arrived. The gunshots had been coming from the roof, and Stuart was the only person that she had seen there. On cross-examination, Stuart asked Haley whether she saw him with a gun or firing a gun; she responded no. The district court again instructed the jury to consider her testimony only for state of mind or intent.

Before deliberations, the court reiterated that the jury could consider the May 7 offense only for limited purposes: intent, state of mind, or, it now added, the identity of the May 18 and 23 robber.

Stuart contends that the May 7 assault was irrelevant and that it served only to inflame the jury. The government counters that the May 7 assault was necessary to show Stuart's identity as the May 18 and 23 robber and to demonstrate that he had the requisite intent or state of mind to commit the charged offenses.

Under Rule 404(b)(1), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." But the "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, [or] . . . identity." FED. R. EVID. 404(b)(2).

This court applies a two-step test to evaluate the admission of such extrinsic offense evidence. *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc). First, the extrinsic offense must be "relevant to an issue other than the defendant's character." *Id.* An extrinsic offense's "relevance is a function of its similarity to the offense charged." *Id.* "[S]imilarity, and hence relevancy, is determined by the inquiry or issue to which the extrinsic offense is addressed." *Id.* And the government must demonstrate that the defendant committed the offense because it is relevant "only if . . . [he] in fact committed it." *Id.* at 912.

Second, the evidence's probative value must not be "substantially outweighed by its undue prejudice and must meet the other requirements of rule 403." *Id.* at 911. "[W]e consider (1) the government's need for the extrinsic evidence, (2) the similarity between the extrinsic and charged offenses, (3) the amount of time separating the two offenses, and (4) the court's limiting instructions, in addition to the overall prejudicial effect of the extrinsic evidence." *United States v. Meyer*, 63 F.4th 1024, 1040–41 (5th Cir.) (cleaned up), *cert. denied*, 144 S. Ct. 312 (2023).

At *Beechum*'s first step, Stuart's May 7 assault was relevant to his identity as the armed robber of May 18 and 23. The government established that all three offenses involved the same gun. By proving that Stuart committed the May 7 assault, the government could also identify him as the armed robber.

Stuart retorts that the offenses were too dissimilar to be relevant. He

points out that his domestic assault of his girlfriend's daughter doesn't share a *modus operandi* with his armed robberies of gas stations. But "similarity, and hence relevancy, is determined by the inquiry or issue to which the extrinsic offense is addressed." *Beechum*, 582 F.2d at 911. The "inquiry or issue" is the identity of the May 18 and 23 robber. Because all three offenses shared the same gun, which suggests that the same person committed them all, the offenses were "similar" for purposes of Rule 404(b).

Nor, at *Beechum*'s second step, was the May 7 assault's probative value "substantially outweighed by its undue prejudice." *Id.* at 911. As Stuart points out, the government and district court had initially resolved to call the May 7 assault an "occurrence" and to avoid detailing it. But he contested that he had committed that assault: "How is it that . . . on May 7th there was a family violence and shots was fired? How is it that you find the shell for a bullet casing or shell in an apartment complex parking lot and place it on Mr. Stuart?" The assault was thus irrelevant unless the government could establish that he had committed it. *Id.* at 912 (explaining that extrinsic offense is relevant only where government establishes that the defendant committed it). And to show that he committed it, the government needed Haley and Bravo to describe the incident. *Meyer*, 63 F.4th at 1040–41 (considering government's need for extrinsic offense).

Further, Stuart made identity the central issue, contesting repeatedly whether eyewitnesses accurately identified him and whether video surveillance depicted him. *See Beechum*, 582 F.2d at 914 (explaining that probative value is higher where issue is contested).

The district court further mitigated any prejudice by repeatedly limiting the jury's consideration of it. *See id.* at 917 (considering limiting instructions). During testimony, the court instructed the jury to consider the May 7 assault to decide only Stuart's intent or state of mind. Before deliberations,

it added that the jury could also use the May 7 assault to determine whether Stuart was the May 18 and 23 robber. And "jurors are presumed to follow the instructions given to them by the court." *United States v. Nieto*, 721 F.3d 357, 371 (5th Cir. 2013) (quoting *United States v. Owens*, 683 F.3d 93, 104 (5th Cir. 2012)).

The May 7 assault's prejudicial effect was also minimal. As Stuart notes, it did not "closely . . . resemble[]" the charged robberies. *See Meyer*, 63 F.4th at 1041 (considering "overall prejudicial effect of the extrinsic evidence" and noting that "the 'more closely an extrinsic offense resembles the charged offense, the greater the prejudice'").

The district court did not abuse its discretion by admitting testimony of the May 7 assault. We need not consider whether it was also admissible to demonstrate Stuart's intent or state of mind.

## B.

Stuart challenges the prosecutor's and district court's statements about his charge for a violent assault of a prison officer.

Before trial, the district court joined the 2019 robbery and gun charges with a 2020 charge for assaulting a prison officer.[1] During opening instructions and statements, the district court and prosecution briefly described the prison assault charge.

Late into trial—but before any party had introduced evidence of the prison assault—the court severed the assault charge, concluding that it was too prejudicial to Stuart and not central to the robbery charges at the "heart

---

[1] Stuart's opening brief contended that he was tried for this assault without a grand jury indictment. But he abandons that theory in his reply brief, acknowledging that his "assertion was factually incorrect."

of this case." At that point, the government hadn't yet presented evidence of the assault. Neither the government nor the court had mentioned it after opening statements. The court instructed the jury before deliberations that it had heard no evidence of the assault, that it had been severed, and to disregard any mention of it.

Stuart says that the court's and the government's introductory statements about the assault constitute reversible error. He concedes that we review for plain error because he failed to object at trial; we reverse only if (1) there was error (2) that was clear and obvious and (3) that affected the defendant's substantial rights. *United States v. Munoz*, 150 F.3d 401, 413 (5th Cir. 1998). He says that the court and prosecutor plainly erred by mentioning the assault because, under Federal Rule of Criminal Procedure 8, the 2020 assault charge was obviously misjoined to the 2019 charges of which he was ultimately convicted.

We may not reverse if the error was harmless. *See id.* at 412–13; *United States v. Lowenberg*, 853 F.2d 295, 301–02 (5th Cir. 1988) ("A prosecutor's remarks to the jury constitute[] reversible error only when they are both 'inappropriate and harmful.'" (quoting *United States v. Chase*, 838 F.2d 743, 749 (5th Cir. 1988))). In *Munoz*, for example, the district court had disclosed the defendant's aggravated robbery conviction during *voir dire*, which the defendant claimed violated *Old Chief v. United States*, 519 U.S. 172 (1997). We affirmed; "regardless of the standard of review," and even had the trial judge's statements been error,

> any prejudice . . . was remedied by the absence of any mention of the conviction's nature during trial, the trial judge's admonition to the jury at the start of trial "not to consider the specific offense of which the Defendant has been convicted," and his instructions . . . at the end of trial "not to consider the underlying felony conviction for any purpose" and to consider only

that [the defendant] had stipulated to being a convicted felon. *Munoz*, 150 F.3d at 413.

Any error here was also harmless. After opening statements, no party again mentioned the prison assault or presented any evidence of it. *See id.* (finding no prejudice in "the absence of any mention of the conviction's nature during trial"). And before deliberations, the district court instructed the jury to disregard any mention of the assault, emphasizing that it had heard no evidence on that charge. *See id.* (finding no prejudice where district court instructed jury to disregard prejudicial information); *Nieto*, 721 F.3d at 371 (presuming that jurors "follow the instructions given to them by the court" (quoting *Owens*, 683 F.3d at 104)).

Stuart complains that the district court's limiting instruction, inform-ing the jury that the assault charge had been severed, "left the impression that the assault offense was a valid charge that merited a separate trial." But before giving its instruction, the court asked Stuart, "Are you comfortable with what I have just told you I would tell the jury?" "Yes, Your Honor," he responded. Because he "affirmatively agreed" to that instruction, he has waived any challenge to it. *United States v. Hill*, 63 F.4th 335, 360 (5th Cir.) (observing that a defendant may waive challenge to jury instruction by agreeing to its wording), *cert. denied*, 144 S. Ct. 207 (2023).

Neither the district court nor the prosecution committed reversible error by mentioning the assault charge.

## C.

Stuart contends that the court violated his Confrontation Clause rights when it prohibited him from inquiring on cross-examination about Abdul Kareem's pending state felony charges.

Kareem, the Corner Store cashier, testified about the May 18 robbery.

He appeared in an orange jumpsuit, and the prosecution established that he was in custody for state felony charges. The court allowed Stuart to ask Kareem whether he had received, or was hoping to receive, any favorable treatment from the prosecution. But it forbade Stuart from cross-examining Kareem about his specific charges of aggravated assault and attempted kidnapping.

The Confrontation Clause guarantees only "an *opportunity* for effecttive cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). To establish a confrontation violation, "the defendant need only establish that a reasonable jury might have received a significantly different impression of the witness's credibility" had he "been permitted to pursue his proposed line of cross-examination." *Skelton*, 514 F.3d at 440 (cleaned up). "[W]hether the exclusion of evidence is of a constitutional dimension depends on the district court's reason for the exclusion and the effect of the exclusion." *Id.* (cleaned up). That analysis "typically includes an inquiry into the admissibility of the evidence under the Federal Rules of Evidence" and is subject to harmless-error review. *Id.*

The government avers that the district court didn't violate Stuart's confrontation rights because Federal Rule of Evidence 608(b) made Kareem's specific charges inadmissible for any purpose. Rule 608(b) provides that, "[e]xcept for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b). The district court agreed.

Stuart counters that Rule 608(b) doesn't apply because he was not seeking to prove that Kareem had a character for untruthfulness. That would have been an impermissible purpose, he concedes. Instead, he was trying to

show that Kareem had an incentive to please the federal government. *Skelton*, 514 F.3d at 442 (evidence not admissible under Rule 608 for character purposes may be admissible to show bias).

"We may affirm on any basis supported by the record." *See United States v. Holdman*, 75 F.4th 514, 519 (5th Cir. 2023). Even if Rule 608(b) allowed Stuart to introduce Kareem's specific charges, that evidence "is [still] subject to Rule 403"; "the probative value of admitting such evidence must not be substantially outweighed by any prejudicial effect." *Skelton*, 514 F.3d at 442.

And the probative value of Kareem's specific charges was "substantially outweighed by any prejudicial effect." *See id*. The specific charges were only "marginally relevant" to Kareem's bias. *Id*. The jury already knew that Kareem, who was testifying in an orange jumpsuit, was in custody for felony charges. Because they were state charges, Kareem would have had little desire to curry favor with the federal government.

Under those circumstances, Stuart has not established that a "reasonable jury might have received a significantly different impression of [Kareem's] credibility had [Stuart] been permitted to pursue his proposed line of cross-examination." *Id*. at 440 (quotations omitted). Indeed, Stuart was able to cross-examine Kareem about whether he had received, or was hoping to receive, any favors from the federal government. *See id*. at 443 (finding no Confrontation Clause violation where defendant was able "to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness" (quotations omitted)).

The district court did not violate Stuart's confrontation rights.

D.

Stuart asserts that his Sixth Amendment right to a speedy trial was violated. The superseding indictment was returned in August 2019, he points out, but trial did not start until March 2023, 45 months later.

"Speedy trial claims are examined under the four-pronged balancing test set out in *Barker v. Wingo*," 407 U.S. 514 (1972). *Nelson v. Hargett*, 989 F.2d 847, 851 (5th Cir. 1993). We examine "(1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant." *Id.*

The length of delay "performs a dual function." *Id.* It is first a "threshold"; a defendant must "establish[] that the interval between accusation and trial has crossed the line dividing ordinary from 'presumptively prejudicial' delay." *Id.* (cleaned up). A delay of greater than one year "trigger[s]" a speedy-trial analysis. *Id.* And where the delay crosses that threshold, it is then examined "as one factor among several." *Id.*

The relevant delay was only one-and-a-half years. Although 45 months elapsed before trial started, "[t]he speedy trial clock is properly tolled in cases where responsibility for the delay lies with the defendant rather than the [government]. A defendant, for example, will not be heard to complain of a lapse of time attributable to continuances he sought and received from the trial court." *Id.* at 852. Two years passed because Stuart had repeatedly sought and received continuances.

While that delay "triggers" this court's speedy-trial analysis, it was not long enough to weigh heavily in Stuart's favor. *Amos v. Thornton*, 646 F.3d 199, 206–07 (5th Cir. 2011) (per curiam) ("A delay must persist for at least eighteen months over and above [one year] to strongly favor the accused."); *United States v. Serna-Villarreal*, 352 F.3d 225, 232 (5th Cir. 2003) (finding that delay of "only three years and nine months" "does not

weigh heavily in [the defendant's] favor").

Also, as the government says, the delay was largely Stuart's fault. *Nelson*, 989 F.2d at 853 (examining reason for delay). Apart from the continuances, he six times moved to replace or dismiss his attorney or complained to the court about his attorney. He filed multiple frivolous motions. He refused for months to submit to a mental evaluation under 18 U.S.C. § 4241.

He protests that he can't be blamed for refusing to submit to a mental evaluation because the district court improperly ordered it. Not so. A district court may order a competency hearing where it finds "reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect," and "in deciding whether to order the hearing, the court also may order a psychological [or psychiatric] evaluation of [the] defendant." *See United States v. Soto*, 734 F. App'x 258, 259 (5th Cir. 2018) (per curiam) (first quoting § 4241(a); then quoting § 4241(b)). The district court considers "(1) any history of irrational behavior, (2) the defendant's demeanor at trial, and (3) any prior medical opinion on competency." *United States v. Davis*, 61 F.3d 291, 304 (5th Cir. 1995). Reviewing for abuse of discretion, *id.*, we conclude that the court had enough to find reasonable cause to believe that Stuart had a mental defect: his strangulation of a prison officer; his lawyer's concerns about his competency; his absurd *pro se* legal filings; and his prior drug use.

Stuart also delayed in asserting his speedy-trial rights until two years after his superseding indictment. *See Nelson*, 989 F.2d at 852 (considering defendant's assertion of speedy-trial rights).

And he has failed to demonstrate prejudice, either actual or presumed. *United States v. Duran-Gomez*, 984 F.3d 366, 378–80 (5th Cir. 2020). Prejudice is not presumed here because "the first three *Barker* factors [do not] weigh heavily against the government." *Id.* And having asserted actual pre-

No. 23-20590

judice for the first time in his reply brief, he has forfeited that argument. *United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005) (per curiam).

"Balancing the *Barker* factors," most of which weigh against Stuart, "we hold that [his] right to a speedy trial has not been violated." *Duran-Gomez*, 984 F.3d at 380.

AFFIRMED.