# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 29, 2010

No. 09-20750

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

GLADYS NELL BISHOP,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before GARZA and BENAVIDES, Circuit Judges, and LYNN[*], District Judge.

EMILIO M. GARZA, Circuit Judge:

Appellant Gladys Bishop ("Bishop") was indicted on three counts of making a false statement in a tax return, in violation of 26 U.S.C. § 7206(1). She was convicted and sentenced to thirty-six months in prison. Bishop appeals from the district court's denial of her pre-trial motion for dismissal of her indictment, the district court's alleged refusal to permit her to assert the defense of her choosing, and the district court's denial, without a hearing, of her motion for a new trial based on her claim of ineffective assistance of counsel. For the reasons set forth herein, we affirm.

---

[*] District Judge of the Northern District of Texas, sitting by designation.

No. 09-20750

**I**

Bishop was the owner and president of Quality Trucking, Inc. ("Quality Trucking"). Her son, Travis Bishop, was its vice president. On her 2000, 2001 and 2002 corporate tax returns, Bishop failed to report income she received through Quality Trucking business. All in all, the unreported income, across the three-year period, totaled $534,937. In March 2007, following a six-year investigation of the company's activities, a grand jury indicted Bishop on three counts of violating 26 U.S.C. § 7206(1). Her indictment was sealed on the ground that the investigation into the unreported Quality Trucking income was ongoing and Bishop was a flight risk.

Bishop was arraigned in January 2009. Bishop and the Government jointly sought two continuances, both of which were granted. Thereafter, Bishop filed a motion to dismiss the indictment, alleging *inter alia* that the Government failed to conduct a speedy trial. The district court denied Bishop's speedy trial claim. The trial proceeded, and Bishop was convicted on all three counts.

After her conviction but before her sentencing, Bishop hired new counsel and filed a motion for a new trial under Rule 33 of the Federal Rules of Criminal Procedure. In the motion, Bishop argued that her original trial counsel rendered ineffective assistance in three ways: (1) failing to communicate Bishop's acceptance of a proposed plea bargain to either the Government or the district court; (2) attempting to further negotiate the terms without Bishop's authorization; and (3) failing to adequately investigate Bishop's cognitive disabilities, despite trial counsel's own observation of those disabilities throughout the pretrial decision-making period. The district court denied Bishop's motion without a hearing. Bishop was sentenced to a thirty-six month term on each count, with the sentences to run concurrently, and three concurrent one-year terms of supervised released. This appeal follows.

No. 09-20750

## II

Bishop contends that the district court should have concluded that the delay in trying her was presumptively prejudicial.   A defendant's Sixth Amendment speedy trial claim is evaluated pursuant to a four-factor balancing test considering: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's diligence in asserting her Sixth Amendment right; and (4) any prejudice to the defendant resulting from the delay. *Barker v. Wingo*, 407 U.S. 514, 530-33 (1972); *see also United States v. Frye*, 489 F.3d 201, 209 (5th Cir. 2007). Once a speedy trial analysis is triggered, the court "determines whether the first three *Barker* factors weigh so heavily in favor of the defendant that prejudice is presumed." *Frye*, 489 F.3d at 209 (internal quotations and citation omitted).  If the first three factors do not justify a presumption of prejudice, "then the defendant bears the burden of establishing actual prejudice and demonstrating that such prejudice is sufficient to outweigh the other three factors." *Frye*, 489 F.3d at 209.  We review the trial court's weighing of the *Barker* factors de novo.  *United States v. Molina-Solario*, 577 F.3d 300, 304 (5th Cir. 2009).  We review its underlying findings of facts, however, for clear error. *Id.* at 303 (citing *United States v. Frye*, 372 F.3d 729, 735 (5th Cir.2004)).

## A

Bishop contends that the length of her post-indictment delay weighs in favor of concluding that the delay was presumptively prejudicial.  In considering the length of a delay, this court has generally held that delays of less than five years are insufficient, by duration alone, to give rise to a presumption of prejudice and relieve the defendant of satisfying *Barker*'s fourth prong.  *See United States v. Parker*, 505 F.3d 323, 328 29 (5th Cir. 2007) (delay of 17 months insufficient to presume prejudice); *see also United States v. Serna-Villarreal*, 352 F.3d 225, 233 (5th Cir. 2003) (delay of three years and nine months insufficient).

3

Bishop argues, however, that the length of her delay favors a finding that it was presumptively prejudicial for three reasons: (1) the post-trial delay came after a six-year delay from the time the investigation began; (2) her advanced age made her subject to cognitive deterioration and the "other realities of advanced age"; and (3) the factual complexity of the case demanded a speedier trial, given the complex transactions and business practices relevant to the case. She concedes that she has waived her right to assert a claim of unreasonable pre-indictment delay.  Her first argument, therefore, is not that the pre-indictment delay was unreasonable, but that the context of the pre-indictment delay renders the post-indictment delay presumptively prejudicial. We disagree. Claims of pre-indictment delay are considered under the Fifth Amendment, while claims of post-indictment delay are considered under the Sixth Amendment. *United States v. Byrd*, 31 F.3d 1329, 1339 (5th Cir. 1994).  To the extent that the pre-indictment delay is relevant to this factor at all, we must consider it in light of the fact that Bishop had an adequate, independent constitutional protection through which to protect herself from pre-indictment delay, and she did not avail herself of it. Understood in those terms, the pre-indictment delay does not, at least in this instance, render the otherwise permissible post-indictment delay prejudicial.

We agree that a defendant's age and health may be relevant to a speedy trial claim.  They will be most relevant, however, in evaluating whether actual prejudice occurred pursuant to the fourth *Barker* factor.  The same is true for the complexity of the case.  It is true that the length of delay, like the other criteria, is to be considered on a case-by-case basis. *See United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in United States Currency*, 461 U.S. 555, 565 (1983) ("Little can be said on when a delay becomes presumptively proper, for the determination necessarily depends on the facts of the particular case.   Our inquiry is the constitutional one of due process; we are not establishing a statute of limitations.").  Nevertheless, when considering the

4

"length of a delay" factor, the paramount issue is the actual duration itself. The additional factors identified by Bishop do not rise to the level of tilting this factor in her favor in this instance.

**B**

Bishop next contends the reasons for her delay also favor a holding that it was presumptively prejudicial. We will not presume prejudice "[i]f the government diligently pursues a defendant from indictment to arrest." *United States v. Bergfeld*, 280 F.3d 486, 489 (5th Cir. 2002) (quoting *Doggett v. United States*, 505 U.S. 647, 656 (1992)). In contrast, deliberate, bad-faith delays made to hamper the defense and gain some impermissible trial advantage do weigh against the Government. *Doggett*, 505 U.S. at 656. "Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground." *Id.* at 657. The district court determined that the Government's post-indictment delay was not a bad-faith, tactical maneuver to reap litigation advantages. In particular, the district court credited the Government's cited reasons for sealing the indictment and delaying the trial, specifically Bishop's flight risk and the Government's continued investigation of Travis Bishop.

Bishop cites data from the Department of Justice showing that individuals charged with fraud offenses rarely flee before trial. The conclusion that she was a flight risk was not, however, based simply on the fact that she faced fraud-type charges, but rather on the sheer magnitude of her potential liability, as attested to by IRS Agent Mark Lyons. *See United States v. Arroyo–Reyes*, 32 F.3d 561, 1994 WL 440654 at *4 (1st Cir. Aug. 15, 1994) (considering severity of penalties in risk-of-flight analysis). Moreover, the district court's conclusion that the Government's belief that Bishop was a flight risk was valid is subject only to clear error review.

Bishop further argues that the Government has not shown that it was diligently pursuing the investigation, and thus any delay based on that

investigation was the result of official negligence.  The record shows that the ongoing investigation responsible for the delay consisted largely, if not entirely, of internal discussions regarding whether Travis Bishop would be indicted and internal consideration of how to proceed.  There is a limit, of course, to the amount of delay that can be reasonably justified by discussions and consideration alone.  The cases on which Bishop relies to allege official negligence, however, involved considerably longer delays with less justification. *See Bergfeld*, 280 F.3d at 490 (delay over five years while taking minimal steps to apprehend codefendants); *Doggett*, 505 U.S. at 657-58 (delay over eight years, six of which while Government was negligently unaware that defendant had re-entered the country).

The trial court's core finding, moreover, that the Government was not engaging in a deliberate attempt to gain an impermissible advantage at trial, was based on findings of fact that were not clear error.  Therefore, this factor does not bring this case into the class of cases where the reason for delay is sufficient, in and of itself, to give rise to a presumption of error.

## C

Bishop finally contends that the district court erred in holding that the third *Barker* factor—her timely assertion of her speedy trial rights—favored the Government.  The trial court based its conclusion  on the fact that, after her indictment became known to her, Bishop filed two motions for continuances before raising the speedy trial issue in her motion to dismiss.

Bishop's argument on this point has more merit than the district court acknowledged. First, of course, Bishop correctly observes—and the Government does not dispute—that she had no opportunity to assert her right to a speedy trial at any time during the first twenty-two months post-indictment because the case was sealed.  Bishop did not acquiesce in the delay in the same manner as an individual who fails to object to a motion for a continuance filed by the Government.  *See Frye*, 489 F.3d at 212.   The bulk of the delay had already

occurred when she sought her continuances, and the complex nature of the case renders the continuances understandable. In light thereof, this factor at most weakly favors the Government, if at all.

### D

None of the first three *Barker* factors is individually sufficient to give rise to a presumption of prejudice in this case. Moreover, although our analysis above differs from the trial court's in some particulars, we agree with its ultimate conclusion that the factors are, on balance, insufficient when considered together. Therefore, Bishop was entitled to a dismissal based on her speedy trial rights only upon a showing of actual prejudice. Bishop has not challenged the district court's finding that no actual prejudice occurred. Therefore, reversal is not warranted.

### III

Bishop also contends that the trial court violated her constitutional right to present a complete defense by preventing her from arguing that her case was a "perjury case" rather than a "tax case." She does not argue that she should have been charged under some statute other than § 7206(1); rather, her challenge solely concerns the way in which she sought to characterize the charge.

As an initial matter, Bishop and the Government disagree regarding the standard of review applicable to this argument. Bishop suggests that, because she has presented a question of constitutional law, we should review the issue de novo. *See United States v. Locke*, 482 F.3d 764, 766 (5th Cir. 2007) ("[W]e review issues of constitutional law de novo." (citations omitted)). The Government counters that Bishop did not raise her constitutional claim at trial, and therefore review is for plain error. *See United States v. Bourgeois*, 423 F.3d 501, 506 (5th Cir. 2005) (noting that the defendant "raised none of the constitutional challenges in the district court that he now raises on appeal" and that "[a]ccordingly, we review them for plain error").

Bishop's allegation of error stems from the district court's ruling preventing her attorney from asking IRS Special Agent Robert Whalen whether this case was "basically a perjury case." The Government objected to the question, and the court sustained the objection, observing, "This is a tax case." Bishop then moved on in her cross-examination. Her counsel took no steps to inform the district court that barring the question potentially violated Bishop's constitutional rights or to clarify the nature of the defense she was pursuing. Her argument on appeal, therefore, must be reviewed for plain error. To establish plain error, Bishop must demonstrate: (1) there was an error; (2) the error is "plain"; and (3) the error affected her substantial rights, was prejudicial and affected the outcome of the district court proceeding. *United States v. Olano*, 507 U.S. 725, 731–32 (1993). We will correct a plain error only if the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* at 736.

Bishop's argument hinges on a misreading of our discussion of § 7206(1) in *State v. Adams,* 314 F. App'x 633, 638 (5th Cir. 2009). In that case, we stressed, in *obiter dicta*, that a § 7206(1) false return case is "a perjury case," unlike, for example, a tax evasion or failure to file case. We interpret those remarks simply to distinguish a charge under § 7206(1) from other types of tax-related charges. We did not hold, nor would it make sense to hold, that false return cases are not "tax cases."[1] Regardless, even if Bishop's characterization of *Adams* were accurate, she could not show that the district court's ruling affected the outcome of its proceedings, as is required for a reversal based on plain error. The court's lone ruling on her questioning of Whalen did not prospectively prevent her from emphasizing the elements of the Government's case that she considered weakest. Moreover, we see no reason to think that the

---

[1] In fact, later in the opinion, we made clear that *Adams* was a "tax case." 314 F. App'x at 652 (referring to another case as "also a tax case").

jury's verdict would have been any different even if she had emphasized those points in the manner she says she would have preferred. Reversal on this point is not warranted.

## IV

Bishop contends that the district court erred in denying her motion for a new trial without granting a hearing to consider her ineffective assistance claims on the merits. She contends that the court should have granted a hearing in order to develop the factual record or, in the alternative, should have granted the motion for a new trial without a hearing. The Government counters that the district court acted within its discretion, in light of the circumstances of the case and the general principle that the preferred device for raising a claim of ineffective assistance of counsel is a federal habeas corpus petition under 28 U.S.C. § 2255.

A defendant may raise a claim of ineffective assistance of counsel in a motion for a new trial. *See United States v. Fuchs*, 467 F.3d 889, 910-11 & n.15 (considering ineffective assistance of counsel claim that was raised in motion for a new trial). However, a motion for relief in habeas corpus pursuant to 28 U.S.C. § 2255 "is the preferred method for raising a claim of ineffective assistance of counsel." *United States v. Gordon*, 346 F.3d 135, 136 (5th Cir. 2003) (citing *Massaro v. United States*, 538 U.S. 500, 504 (2003)). Regardless of whether an ineffective assistance of counsel claim is raised in a motion for a new trial, on collateral review, or on direct appeal, the standard of review is the same. *Strickland v. Washington*, 466 U.S. 668, 697 (1984). The defendant bears the burden of demonstrating that (1) counsel's performance fell below an objective standard of reasonableness and that (2) but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 687-96.

We review the district court's denial of a motion for a new trial for an abuse of discretion. *United States v. Simmons*, 714 F.2d 29, 31 (5th Cir. 1983). The record of a defendant's criminal trial will rarely be adequately developed for

the purpose of considering an ineffective assistance of counsel claim. *See Gordon*, 346 F.3d at 137 (noting that it is a "rare case" where the record on direct appeal is adequate to permit consideration of an ineffective assistance claim). Although Bishop supplemented the trial record with her motion and attachments,[2] the motion presented a one-sided account of events that took place primarily outside the view of the court. Bishop's telling of those events has not been subject to rebuttal or cross-examination. Therefore, it would have been inappropriate to grant the motion without a hearing.

The decision to conduct an evidentiary hearing on a motion for a new trial is within the sound discretion of the district court and we will reverse only where the ruling was so clearly erroneous as to constitute an abuse of discretion. *United States v. Blackthorne*, 378 F.3d 449, 455 (5th Cir. 2004); *see also United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007) (applying abuse of discretion standard on direct appeal to denial of an evidentiary hearing regarding an ineffective assistance claim). Bishop argues that she was entitled to a hearing because her motion for a new trial pleaded material facts that, if true, would satisfy the requirements for a showing of ineffective assistance of counsel under *Strickland*. In *Demik*, the defendant raised a similar argument. 489 F.3d at 646-47. Because the plaintiff's allegation of ineffective assistance had been poorly pled, we affirmed the denial of new trial without setting forth a precise test for when it would be an abuse of discretion to deny such a hearing.[3]

---

[2] Bishop's attachment included the following: correspondence from the Department of Justice attempting to finalize a settlement; an affidavit by Bishop detailing her attempts to plead guilty and her original trial counsel's responses; an affidavit by Travis Bishop recounting meetings he attended between Bishop and her original trial counsel as well as his own observations based on day-to-day interaction with his mother; a bank deposit ticket from June 4, 2009, showing a transfer of funds, allegedly in anticipation of a plea including payment of her liabilities; an affidavit from her new counsel detailing his investigations into ineffective assistance rendered at trial; and an affidavit from a licensed psychologist attesting to Bishop's cognitive difficulties.

[3] We held that a motion for a new trial's "conclusional allegations" of ineffective assistance of counsel do not require a trial court to conduct an evidentiary hearing before

No. 09-20750

We are now presented with a motion for a new trial in which the defendant's claims were raised with greater specificity. In light of the significant factual issues necessary to the ineffective assistance claim, we hold that it was not an abuse of the district court's discretion to deny the motion in favor of allowing Bishop to raise those issues in § 2255 proceedings. A full hearing of Bishop's claims would have required not only a close analysis of her original counsel's actions toward Bishop, but also the actions of the Government in pursuing the plea deal, as well as psychological evidence regarding Bishop's mental state. It was within the district court's discretion to decline to prolong its original proceedings to consider matters that would be better raised collaterally. We accordingly affirm the denial of motion for new trial, without prejudice to Bishop's raising the ineffective assistance claims in a later proceeding.

## V

For the foregoing reasons, we AFFIRM the judgment of the district court in all respects.

---

denying the motion. *Demik*, 489 F.3d at 646-47.