**Affirmed and Opinion Filed July 21, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-14-00632-CR
No. 05-14-00633-CR

**EDWIN PINEDA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 4**
**Collin County, Texas**
**Trial Court Cause Nos. 003-81224-09 and 003-81225-2009**

## MEMORANDUM OPINION

Before Justices Lang, Stoddart, and Schenck
Opinion by Justice Lang

Edwin Pineda appeals the trial court's final judgments, convicting him of charges of an accident involving damage to a vehicle in an amount of $200 or more and driving while intoxicated (D.W.I.). *See* TEX. TRANSP. CODE ANN. § 550.022 (West 2011) (accident involving damage to vehicle); TEX. PENAL CODE ANN. § 49.04 (West Supp. 2014) (driving while intoxicated). The jury found Pineda guilty and the trial court assessed his punishment at forty-five days of confinement in the county jail in each case. In his sole issue on appeal, Pineda argues the trial court erred when it denied his motion to dismiss the case due to the alleged violation of his right to a speedy trial. We conclude the trial court did not err. The trial court's final judgments are affirmed.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Pineda was arrested on February 6, 2009 for an accident involving damage to a vehicle and D.W.I. This was his second offense for D.W.I. and Pineda was still on community supervision for a prior D.W.I. On February 7, 2009, Pineda was transferred to the Collin County jail. On February 9, 2009, the jail released Pineda on bond and he was transferred to the custody of U.S. Immigration and Customs Enforcement. On February 17, 2009, Pineda entered into a "voluntary deportation agreement."[1] Approximately seven days after he entered into that agreement, Pineda boarded a flight to Honduras at his own expense. According to Pineda, he hired an attorney at some point in February 2009. The docket sheet in the D.W.I. case reflects that Pineda's first attorney filed a letter of representation with the trial court on March 25, 2009.

On April 9, 2009, the information for the offense of accident to a vehicle involving damage was filed. On April 13, 2009, a notice to appear was issued to Pineda in the accident case, ordering him to appear on May 8, 2009. On April 29, 2009, the information for the offense of D.W.I. was filed. On April 30, 2009, the Collin County Community Supervision and Corrections Department filed a notice of violation with the trial court in the D.W.I. case, stating Pineda had not reported to its office since being released from jail, confirming Pineda had been "deported," and advising it had filed a motion to revoke Pineda's community supervision in his prior D.W.I. case. It also recommended that the trial court revoke Pineda's bond. Pineda did not notify his probation officer of a change in his address.

On January 22, 2010, a notice to appear was issued to Pineda in the accident case, ordering him to appear on February 19, 2010. Also, on January 22, 2010, a notice to appear was issued to Pineda and his first attorney in the D.W.I. case, ordering Pineda to appear before the

---

[1] Pineda testified about his agreement and referred to it as a "voluntary deportation agreement." He said that he was in immigration custody for two days then, "[t]hey let me leave voluntarily, and I paid for my own ticket to go back to my country. And I waited in Austin, Texas, for about seven days before going to Honduras." Pineda's agreement with the federal government was not admitted into evidence.

trial court on February 19, 2010. Pineda failed to appear on February 19, 2010, and warrants and bond forfeiture capiases were issued in both cases.

At some point, Pineda returned to the United States illegally, but he did not notify his probation officer of his return. On April 3, 2014, Pineda was detained on his bond forfeiture capiases. On April 11, 2014, the trial court appointed a new, second attorney[2] to represent Pineda and set Pineda's cases for a jury trial on April 28, 2014.

On April 24, 2014, Pineda's second attorney filed a motion to dismiss due to the alleged violation of Pineda's right to a speedy trial, seeking only dismissal of the cases with prejudice. On April 28, 2014, immediately before jury selection, the trial court heard evidence and argument on Pineda's speedy trial motion and the trial court denied the motion. Pineda's cases were tried April 28-29, 2014. On April 29, 2014, at the conclusion of the State's case-in-chief, Pineda re-urged his motion to dismiss due to the violation of his right to a speedy trial, which the trial court denied. The jury found Pineda guilty of both offenses. After a hearing on punishment, the trial court assessed Pineda's punishment at forty-five days of confinement in the county jail in each case.

## II. SPEEDY TRIAL

In issue one, Pineda argues the trial court erred when it denied his motion to dismiss the case due to the alleged violation of his right to a speedy trial. He argues there was a five-year delay, the State failed to offer any valid justification for the delay, he promptly asserted his right to a speedy trial, and prejudice should be presumed. He also argues the State failed to rebut the presumption that his right to a speedy trial was violated. The State concedes that the five-year delay is sufficient to trigger a speedy trial analysis. The State responds that the reason for the delay was Pineda's voluntary absence from the United States, Pineda was given a prompt trial

---

[2] The record does not show, nor do the parties provide an explanation as to why a new attorney was appointed for Pineda.

setting upon his first request for a trial, and there is no evidence of oppressive pretrial incarceration, anxiety, or concern and the delay did not prejudice Pineda's ability to prepare a defense.

### *A. Standard of Review*

When reviewing a trial court's decision on a speedy trial claim, an appellate court applies a bifurcated standard of review. *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999); *State v. Jones*, 168 S.W.3d 339, 345 (Tex. App.—Dallas 2005, pet. ref'd). An appellate court reviews legal issues de novo, but gives deference to a trial court's resolution of factual issues. *Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014); *Kelly v. State*, 163 S.W.3d 722, 726 (Tex. Crim. App. 2005); *Munoz*, 991 S.W.2d at 821; *Jones*, 168 S.W.3d at 345. The review of a speedy trial claim must be done in light of the arguments, information, and evidence that was available to the trial court at the time it ruled. *Gonzales*, 435 S.W.3d at 809; *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003); *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003); *Jones*, 168 S.W.3d at 345. Under this standard of review, deference must be given not only to a trial court's resolution of disputed facts, but also to the drawing of reasonable inferences from the facts. *Kelly*, 163 S.W.3d at 726. Deference must be given to a trial court's findings, even when those findings do not turn on the assessment of credibility and demeanor. *Kelly*, 163 S.W.3d at 726.

"[An] appellate court must uphold the trial court's ruling if it is supported by the record and is correct under the applicable law." *Shaw*, 117 S.W.3d at 889; *Munoz*, 991 S.W.2d at 821; *Jones*, 168 S.W.3d at 345. However, if a violation of the defendant's right to a speedy trial is established, the only possible remedy is dismissal of the prosecution. *Strunk v. United States*, 412 U.S. 434, 440 (1973); *Dragoo*, 96 S.W.3d at 313; *Jones*, 168 S.W.3d at 346.

### B. Applicable Law

The Sixth Amendment to the United States Constitution and article I, section 10 of the Texas Constitution provide that the accused shall enjoy the right to a speedy trial. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. In determining whether a defendant has been denied his right to a speedy trial, a court must use a balancing test in which the conduct of both the State and the defendant are weighed. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Shaw*, 117 S.W.3d at 888; *Dragoo*, 96 S.W.3d at 313; *Jones*, 168 S.W.3d at 346. The factors to be weighed in the balance are commonly referred to as the *Barker* factors. These factors include, but are not necessarily limited to: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his speedy trial right; and (4) the prejudice to the defendant resulting from the delay. *Doggett v. United States*, 505 U.S. 647, 651 (1992); *Barker*, 407 U.S. at 530–32; *Gonzales*, 435 S.W.3d at 808; *Shaw*, 117 S.W.3d at 889; *Dragoo*, 96 S.W.3d at 313; *Jones*, 168 S.W.3d at 346. No single *Barker* factor is necessary or sufficient to establish a violation of the right to a speedy trial. *Barker*, 407 U.S. at 533; *Shaw*, 117 S.W.3d at 889; *Dragoo*, 96 S.W.3d at 313. The *Barker* factors are "related" and "must be considered together with such other circumstances as may be relevant." *Barker*, 407 U.S. at 533.

The first *Barker* factor, the length of delay, is a double inquiry. *Doggett*, 505 U.S. at 651. First, to trigger a speedy trial analysis, the defendant must allege the interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay. *Doggett*, 505 U.S. at 651; *Barker*, 407 U.S. at 530; *Shaw*, 117 S.W.3d at 889; *Dragoo*, S.W.3d at 313; *Jones*, 168 S.W.3d at 347. The length of delay is measured from the time the defendant was arrested or formally charged. *Gonzales*, 435 S.W.3d at 809; *Shaw*, 117 S.W.3d at 889; *Dragoo*, 96 S.W.3d at 313; *Jones*, 168 S.W.3d at 346–47. Generally, a "delay approaching one year" is sufficient to trigger a speedy trial inquiry. *Doggett*, 505 U.S. at 652 n. 1; *Shaw*, 117 S.W.3d at

889; *Dragoo*, 96 S.W.3d at 314; *Jones*, 168 S.W.3d at 347. Second, once the defendant has triggered a speedy trial analysis, the court must consider the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim. *Doggett*, 505 U.S. at 652; *Barker*, 407 U.S. at 533–34; *Gonzales*, 435 S.W.3d at 809; *Shaw*, 117 S.W.3d at 889; *Dragoo*, 96 S.W.3d at 314; *Jones*, 168 S.W.3d at 347. The presumption that the pretrial delay has prejudiced the defendant intensifies over time. *Doggett*, 505 U.S. at 652; *Gonzales*, 435 S.W.3d at 809; *Jones*, 168 S.W.3d at 347.

The second *Barker* factor is the State's reason for the delay. Once a defendant has shown a presumptively prejudicial delay, the State has the burden of justifying the delay. *Emery v. State*, 881 S.W.2d 702, 708 (Tex. Crim. App. 1994). The length of the delay can be "subdivided into justifiable and unjustifiable reasons depending on the circumstances of the case" and different weights must be assigned to the different reasons the State offers to justify the delay. *See Gonzales*, 435 S.W.3d at 809–10; *see also Barker*, 407 U.S. at 531; *Shaw*, 117 S.W.3d at 889; *Dragoo*, 96 S.W.3d at 314; *Jones*, 168 S.W.3d at 347. "A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against [the State]." *Barker*, 407 U.S. at 531. A more neutral reason such as an overcrowded court docket is not a valid reason for delay and should be weighed against the State, although not heavily. *Barker*, 407 U.S. at 531; *Shaw*, 117 S.W.3d at 890. A valid reason for the delay, such as a missing witness, should not be weighed against the State at all. *Barker*, 407 U.S. at 531; *Munoz*, 991 S.W.2d 822. However, a delay which is attributable, in whole or in part, to the defendant may constitute waiver of a speedy-trial claim. *Barker*, 407 U.S. at 528–30; *Munoz*, 991 S.W.2d 822. Nevertheless, where there is no evidence a defendant knew of the indictment or that the police were looking for him before leaving the country, the defendant cannot be faulted for the post-indictment delay. *Doggett*, 505 U.S. at 654 (defendant who was arrested in Panama and then subsequently left for

–6–

Columbia after indictment could not be faulted for post-indictment delay because there was no evidence he was aware of the indictment or that the police had been looking for him); *United States v. Ospina*, 485 F. Supp. 2d 1357, 1360 (S.D. Fla. 2007) (second *Barker* factor weighed against government where defendant, who was unaware of charges pending against him, did not flee United States for Columbia, but was involuntarily deported by same Department of Justice that indicted him).  Further, as a general rule, the speedy-trial right is not implicated when a defendant is detained on civil deportation charges.  *See United States v. De La Pena-Juarez*, 214 F.3d 594, 597–98 (5th Cir. 2000) (discussing Speedy Trial Act, 18 U.S.C. § 3161(b)).

The third *Barker* factor is the defendant's assertion of his speedy-trial right.  The more serious the deprivation of a defendant's right to a speedy trial, the more likely he is to complain. *Barker*, 407 U.S. at 531; *Shaw*, 117 S.W.3d at 890.  A defendant's assertion of his speedy-trial right, is entitled to strong evidentiary weight when a court determines whether he is being deprived of that right.  *Barker*, 407 U.S. at 531–32; *Gonzales*, 435 S.W.3d at 810–11; *Jones*, 168 S.W.3d at 348.  A defendant's motion to dismiss due to the denial of a speedy trial, rather than a motion affirmatively requesting a speedy trial, weakens the defendant's speedy trial claim because it shows a desire to have no trial instead of a speedy trial.  *Jones*, 168 S.W.3d at 348 (citing *Zamorano v. State*, 84 S.W.3d 643, 651 n.40 (Tex. Crim. App. 2002)).

The fourth *Barker* factor is the prejudice to the defendant caused by the delay.  This prejudice is assessed in light of the interests that the right to a speedy trial was designed to protect.  *Barker*, 407 U.S. at 532; *Shaw*, 117 S.W.3d at 890; *Dragoo*, 96 S.W.3d at 315; *Jones*, 168 S.W.3d at 349.  These interests are: (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired.  *Doggett*, 505 U.S. at 654; *Barker*, 407 U.S. at 532; *Gonzales*, 435 S.W.3d at 812; *Shaw*, 117 S.W.3d at 890; *Dragoo*, 96 S.W.3d at 315; *Jones*, 168 S.W.3d at 349.  Of these

interests, the third is the most important because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. *Doggett*, 505 U.S. at 654; *Barker*, 407 U.S. at 532; *Gonzales*, 435 S.W.3d at 812; *Shaw*, 117 S.W.3d at 890; *Dragoo*, 96 S.W.3d at 315; *Jones*, 168 S.W.3d at 349.

When determining prejudice, the court determines whether the first three *Barker* factors weigh so heavily in favor of the defendant that prejudice is presumed. *United States v. Reagan*, 725 F.3d 471, 487 (5th Cir. 2013); *United States v. Bishop*, 629 F.3d 462, 465 (5th Cir. 2010); *Gonzales*, 435 S.W.3d at 812. If witnesses die or disappear during a delay, the prejudice is obvious. *Barker*, 407 U.S. at 532. Also, excessive delay presumptively compromises the reliability of a trial in ways neither party can prove or identify. *See Doggett*, 505 U.S. at 655; *Gonzales*, 435 S.W.3d at 812; *Shaw*, 117 S.W.3d at 890; *Dragoo*, 96 S.W.3d at 315; *Jones*, 168 S.W.3d at 349. However, generally, delays of less than five years are insufficient, by duration alone, to give rise to a presumption of prejudice and relieve the defendant of satisfying *Barker*'s fourth factor. *Bishop*, 629 F.3d at 466; *Gonzales*, 435 S.W.3d at 813 (discussing *United States v. Cardona*, 302 F.3d 494, 498 (5th Cir. 2002), which held five-year delay sufficient to absolve defendant of burden to prove prejudice). Even with the presumption of prejudice, the State may still prevail if the presumption of prejudice is extenuated as by the defendant's acquiescence or persuasively rebutted. *United States v. Molina-Solorio*, 577 F.3d 300, 307 (5th Cir. 2009); *see also Doggett*, 505 U.S. at 658; *Barker*, 407 U.S. at 534–36; *Shaw*, 117 S.W.3d at 890; *Dragoo*, 96 S.W.3d at 315; *Jones*, 168 S.W.3d at 349. In the absence of such a presumption, the defendant must affirmatively demonstrate prejudice. *Reagan*, 725 F.3d at 487; *Molina-Solorio*, 577 F.3d at 307.

### C.  Application of the Law to the Facts

On April 24, 2014, Pineda's second attorney filed a motion to dismiss due to the violation of Pineda's right to a speedy trial, seeking only dismissal of the cases with prejudice.  In his motion, Pineda asserted that there was no evidence he absconded or knew of the pending charges, the State failed to diligently notify him of the charges or apprehend him, he bears no blame for the delay, and his ability to defend himself was impaired because memories have faded and the identity and location of witnesses who could have testified on his behalf are no longer available.

On April 28, 2014, immediately before jury selection, the trial court heard evidence and argument on Pineda's speedy trial motion.  Pineda and his wife, Ana Soto, testified during the hearing.  Pineda stated that he was arrested on February 6, 2009, released on bond a few days later and transferred to the custody of U.S. Immigration and Customs Enforcement, entered into a "voluntary deportation agreement" on February 17, 2009 and, approximately seven days later, returned to Honduras.  Also, he stated that his address from the time of his arrest until April 2014 remained the same, he hired an attorney in February 2009, he did not receive the notices to appear, he was not contacted by his attorney, and he believed the cases against him had been resolved.  Further, Pineda testified that due to the length of the delay, he did not have a good memory of what happened on the night of the accident, he did not have the ability to investigate the accident and resulting damage to the vehicles or determine whether there were any additional witnesses to the accident.  However, Pineda admitted he did not hire an investigator, ask Soto to follow-up with his lawyer or an investigator while she remained in the United States, and that he knew leaving the country did not "absolve[] [him] of the crime."  Also, Pineda acknowledged that when he returned to the United States, he did not notify his probation officer, the bondsman, or the trial court.

Soto confirmed that the address on file with the clerk's office was the correct address. However she stated that she did not receive the notices of appearance. Soto acknowledged that she was aware Pineda was on community supervision for the prior D.W.I., but stated she did not follow up on any of Pineda's cases or ask an attorney or investigator to do so.

Pineda's second attorney argued that Pineda was not to blame for the federal government removing him from the United States and the failure of the clerk's office to send him the notices of appearance. He argued that Pineda did not abscond, but did everything he was told to do and "complied with all of the [] government regulations that were placed in front of him." He argued the State failed to show "they did anything to actually prosecute this case" other than file a "warrant at large." Further, Pineda's second attorney argued, at this point, a medical expert would not be able to determine whether Pineda sustained a concussion as a result of the accident, an investigator would not be able to determine whether there were any additional witnesses, and he could not reconstruct the accident because the construction maps and schedules relating to the location of the accident were unavailable. Also, through Pineda's testimony, his second attorney raised the concern that he did not have access to the vehicles to investigate and make a damage assessment.

The State's response focused on the second and fourth factors of the *Barker* analysis. As to the second *Barker* factor, the State argued there was no deliberate attempt by the State to delay the trial. Rather, Pineda left the United States "of his own choice" pursuant to a "voluntary deportation agreement." Also, the State argued Pineda did not notify his probation officer of a change in his address when he left the United States nor upon his illegal re-entry into the country. As to the fourth *Barker* factor, the State claimed that Pineda did not experience oppressive incarceration because he was in custody only eleven days before voluntarily departing the United States and less than thirty days while awaiting trial in 2014. Also, the State argued

Pineda did not experience anxiety or concern because a "delay in a trial that might wind up having immigration consequences for him was actually in his best interest" since he had re-entered the United States illegally. The State maintained Pineda was not prejudiced by the inability to present witnesses because he admitted the State's witnesses, i.e., three police officers and three civilians, were the individuals with personal knowledge of the events and Pineda would have an opportunity to cross-examine them at trial.

After hearing the evidence and argument of counsel, the trial court denied Pineda's motion to dismiss due to an alleged violation of his right to a speedy trial. Pineda's cases were tried April 28-29, 2014. On April 29, 2014, at the conclusion of the State's case-in-chief, Pineda re-urged his motion to dismiss due to the violation of his right to a speedy trial. No additional evidence was admitted and, after hearing argument, the trial court denied the motion.

### 1.  Length of the Delay

First, we examine the first *Barker* factor—the length of the delay. Pineda was arrested on February 6, 2009. Pineda was charged by information in the accident case on April 9, 2009. Also, Pineda was charged by information in the D.W.I. case on April 29, 2009. A jury was selected on April 28, 2014 and Pineda was tried on April 28-29, 2014. There was approximately a five-year delay from the time Pineda was arrested until the time he was tried. The State concedes this delay was sufficient to trigger a speedy trial inquiry. *See Shaw*, 117 S.W.3d at 889 (generally, one year delay sufficient to trigger speedy trial analysis). The presumption  that the pretrial delay prejudiced Pineda intensifies with time. The pretrial delay in Pineda's case stretches approximately four years beyond the minimum time delay necessary to trigger a speedy trial inquiry, which is generally twelve months. *See Shaw*, 117 S.W.3d at 889 (39-month delay weighed heavily in favor of concluding speedy trial right violated). Consequently, this *Barker* factor weighs in favor of concluding Pineda's right to a speedy trial was violated.

## 2. Reasons for the Delay

Second, we review the second *Barker* factor—the reasons for the delay. During the hearing, Pineda claimed that he did everything the government asked of him, i.e., voluntarily departing the United States, and the State was to blame for the five-year delay in bringing him to trial. He maintained that the State failed to provide the testimony of his probation officer from the first D.W.I. to show that the probation officer "reached out to [Pineda] after he disappeared in February 2009" or the police investigator to show what steps the State took to bring Pineda to justice. Further, it was his contention that "fil[ing] a warrant at large" was not sufficient. At the hearing on Pineda's motion to dismiss, the State did not call any witnesses of its own to explain the delay. Instead, the State sought to rebut Pineda's claim that the State acted in bad faith or deliberately attempted to delay the trial through its cross-examination of Pineda by showing he voluntarily left the country and re-entered illegally. Essentially, the reason for the delay in this case was the absence of Pineda due to his voluntary departure to Honduras.

Pineda claimed he was unaware that the cases were active until his arrest in April 2014. However, during the hearing on his motion to dismiss, Pineda admitted that he has experience with the criminal justice system through his prior prosecution for D.W.I., which resulted in his community supervision, and he knew that he could not simply purchase an airplane ticket, leave the country, and have his "crime absolved." Further, Pineda hired his first attorney in February 2009 and that attorney filed a notice of appearance in the D.W.I. case on March 25, 2009. In addition, the trial court took judicial notice of its files in each case. In those files were the misdemeanor surety bonds signed by Pineda, which state, in part, "The Principal herein is charged with a Misdemeanor. The Principal and all sureties hereby bind themselves that the Principal will appear before the proper court or magistrate to answer the accusations against the Principal."

–12–

Also, although the clerk's record showed that notices of appearance were sent to Pineda at the address on file and Pineda failed to appear, during the hearing on his motion to dismiss, Pineda testified that he did not receive those notices nor was he contacted by his first attorney. However, Pineda admitted that he did not provide a change of address to his probation officer. Also, Soto stated that she did not receive any notices of appearance. However, Soto stated that the address on file with the clerk's office was the correct address and Pineda admitted that it was his address from the time of his arrest in February 2009 until the date of the hearing in April 2014. Whether or not Pineda received the notices of appearance and was aware these cases remained active depends on the trial court's determination of Pineda's and Soto's credibility. We defer to the trial court's resolution of disputed facts and to the drawing of reasonable inferences from the facts. *See Kelly*, 163 S.W.3d at 726.

Although it was not contested that Pineda voluntarily departed for Honduras, nothing in the record shows his exact locations during his absence from the location of the forum and Pineda made no showing that additional efforts would have been successful in securing his return. *See People v. Murry*, 857 N.Y.S.2d 59, 60 (N.Y. App. Div. 2008) (statutory right to speedy trial not violated, although People knew defendant was deported to Jamaica, they did not know his whereabouts, and defendant failed to appear for trial and bench warrants were issued, so period was excludable regardless of whether People used due diligence in attempting to locate defendant); *People v. Perez*, 279 Cal. Rptr. 915, 923 (Cal. Ct. App. 1991) (defendant, who did not know exact nature of charges, but was aware serious charges had been filed against him and fled prosecution to Venezuela, and made no showing additional efforts would have been successful in securing his return, waived right to speedy trial because reason for delay was absence of defendant, for which defendant alone was responsible); *cf. Ospina*, 485 F. Supp. 2d at 1360 (second *Barker* factor weighed against government where defendant, who was unaware of

charges pending against him, did not flee United States for Columbia, but was involuntarily deported by same Department of Justice that indicted him). Further, this is a not a case where the State completely failed to attempt to contact Pineda. Because Pineda voluntarily departed the United States and failed to appear on February 19, 2010, and warrants and bond forfeiture capiases were issued, the period of time after February 19, 2010 and until his re-arrest on April 3, 2014, is excludable, regardless of whether or not the State used due diligence in attempting to locate Pineda and return him for trial during that period. *See Murry*, 857 N.Y.S.2d at 60. On this record, we conclude the State cannot be held accountable for Pineda's voluntary departure from the United States. Accordingly, the second *Barker* factor weighs against concluding Pineda's right to a speedy trial was violated or is, at least, neutral.

### 3. Assertion of the Right to a Speedy Trial

Third, we address the third *Barker* factor—Pineda's assertion of his right to a speedy trial. In April 2014, Pineda was arrested on multiple warrants and brought before the magistrate on April 4, 2014, within forty-eight hours of his arrest. Although his first attorney filed a notice of appearance in the D.W.I. case on March 25, 2009, Pineda first asserted his right to a speedy trial through his second attorney on April 24, 2014, four days before his trial. The motion was heard on April 28, 2014, immediately preceding jury selection. Further, Pineda's motion requested only a dismissal due to the denial of speedy trial, rather than an affirmative request for a speedy trial, demonstrating he desired no trial instead of a speedy trial. *See Jones*, 168 S.W.3d at 348. Consequently, the third *Barker* factor weighs against the conclusion that Pineda's right to a speedy trial was violated.

### 4. Prejudice Resulting from the Delay

Finally, we analyze the fourth *Barker* factor—the prejudice to Pineda resulting from the delay in light of the three interests protected by the speedy-trial right. Pineda contends that the

length of his pretrial delay weighs in favor of concluding the delay was presumptively prejudicial. There was a five-year pretrial delay in these cases. Generally, delays of five years or more are sufficient to give rise to a presumption of prejudice and relieve the defendant of satisfying the fourth *Barker* factor. *See Gonzales*, 435 S.W.3d at 813 (discussing *Cardona*, 302 F.3d at 498, which held five-year delay sufficient to absolve defendant of burden to prove prejudice); *cf. Bishop*, 629 F.3d at 466 (generally, delays of less than five years insufficient, by duration alone, to give rise to presumption of prejudice and relieve defendant of satisfying *Barker's* fourth factor). As a result, we look to whether the State demonstrated Pineda's acquiescence to the delay and persuasively rebutted the presumption of prejudice.

As to Pineda's acquiescence, the State argues Pineda "should have known that his charges had not been resolved by simply paying for his plane ticket back to Honduras" and directs us to its argument with respect to the third *Barker* factor. We have already concluded that the third *Barker* factor weighs against the conclusion that Pineda's right to a speedy trial was violated.

To determine whether the State persuasively rebutted the presumption of prejudice, we examine the three interests the right to a speedy trial was designed to protect. The first interest protected by the speedy-trial right is the prevention of oppressive pretrial incarceration. Initially, we note that Pineda does not contend that he suffered oppressive pretrial incarceration. Nevertheless, during the hearing there was testimony that, after his arrest on February 6, 2009, Pineda was in custody for approximately three days until February 9, 2009, when he was released on bond and transferred to the custody of U.S. Immigration and Customs Enforcement. *See generally, De La Pena-Juarez*, 214 F.3d at 597–98 (discussing Speedy Trial Act and noting, as a general rule, speedy-trial right not implicated when defendant detained on civil deportation charges). After entering into a "voluntary deportation agreement," Pineda was released and left

the United States for Honduras approximately seven days later. Pineda was not retuned to custody until he was re-arrested on April 3. 2014. After that, he remained in custody less than thirty days while awaiting trial. We conclude, in this case, the approximately thirty days Pineda was in custody does not constitute oppressive pretrial incarceration. *Cf. Munoz*, 991 S.W.2d at 828 (17-month delay oppressive incarceration); *Meyer*, 27 S.W.3d at 650 (23-month delay oppressive incarceration).

The second interest protected by the speedy-trial right is the minimization of Pineda's anxiety and concern. Again, we note that Pineda does not assert that he suffered anxiety or concern during the pretrial delay. The record shows that he was on community supervision for a prior D.W.I. and, after his voluntary departure he returned the United States illegally. During the hearing, Pineda testified that because he paid a bond and purchased an airline ticket to Honduras, he was under the impression these cases were resolved. *See Gonzales*, 435 S.W.3d at 812 (because appellant did not know about indictment, he could have suffered little anxiety or concern). As to this second interest, we defer to the trial court's implied finding that Pineda did not suffer or live under a cloud of anxiety and concern beyond the level normally associated with the charges brought against him in these cases. *See Munoz*, 991 S.W.2d at 828–29.

The third interest and most important interest protected by the speedy-trial right is the limitation of the possibility the defense will be impaired. Pineda claims that he was prejudiced by the delay because: (1) a medical expert would be unable to determine whether he sustained a concussion as a result of the accident; (2) memories have faded; (3) he did not have access to the vehicles to investigate and make a damage assessment; (4) he could not reconstruct the accident because the construction maps and schedules were unavailable; and (5) an investigator would not be able to determine whether there were any additional witnesses. The State points to its cross examination of Pineda as well as his testimony on direct examination by his second attorney to

show it persuasively rebutted the presumption of prejudice by demonstrating Pineda's defense was not impaired as result of the delay.

First, with regard to the Pineda's need for a medical expert to evaluate whether Pineda sustained a concussion as a result of the accident and claim that his memory had faded, the State points to the following testimony solicited by Pineda's second attorney during the hearing, after ascertaining the airbag in Pineda's vehicle deployed, as evidence rebutting his claim:

| | |
|---|---|
| Attorney: | You were stunned: right? |
| Pineda: | Yes. |
| Attorney: | You don't even have a good memory of what happened that night? |
| Pineda: | No, sir. |
| Attorney: | Okay. The accident was severe enough that you actually just wandered off the scene? |
| Pineda: | I just tried to sit down, get out and wait for the ambulance. |
| Attorney: | Okay. And you were actually found in a field considerably away from the accident? |
| Pineda: | On the side of the road. |

The State points out that this testimony shows Pineda's possible concussion was alleged to be the result of the accident, not the cause. Further, his fading memory was alleged to have been caused by his possible concussion, not the pretrial delay. We also note that Pineda was charged with D.W.I.

Second, with regard to the Pineda's claims that he did not have access to the vehicles to investigate and make a damage assessment and he could not reconstruct the accident because the construction maps and schedules were unavailable, the State points to Pineda's testimony that he hired an attorney in February 2009 and neither he nor Soto requested that his first attorney or an investigator investigate the charges.

Third, with regard to Pineda's claim that an investigator would not be able to determine whether there were any additional witnesses, the State points to Pineda's testimony on direct, cross, and redirect examination:

[Direct Examination]

Attorney: We have not been able to actually independently interview these witnesses because half of them can't be found—

Pineda: Okay.

Attorney: —right?  So your defense at this point is hampered because of this delay?

Pineda: Okay.

. . . .

[Cross Examination]

Prosecutor: And you testified a moment ago that half of the witnesses would be unavailable because of the time that has passed since the 2009 arrest?

Pineda: Yes.

Prosecutor: But all of the witnesses that would have personal knowledge of the offense other than yourself are State's witnesses; is that right?

Pineda: Yes.

Prosecutor: So—if the State can bring forth all of those witnesses, then—then your defense is not being injured by an inability for witnesses to testify; is that right?

Pineda: Yes.

. . . .

[Redirect Examination]

Attorney: Were you able to try and canvass that neighborhood where the accident took place?

Pineda: No, sir.

Attorney: You don't know if there's any witnesses out there that saw this accident from the roadside?

Pineda:      No, sir.

Attorney:    And this wasn't a deserted street; right?  There was [sic] houses and apartments nearby?

Pineda:      Yes.

Attorney:    And when the government says that all the witnesses are here, they're talking about their witnesses are here.  On top of that, this accident—the air bag in the car actually deployed; right?

Pineda:      Yes.

Key to this analysis is Pineda's admission that "all of the witnesses who have personal knowledge of the offense were the State's witness and if the State brings forth those witnesses his defense is not hampered.

Based on the record, we conclude the State demonstrated Pineda's acquiescence to the delay and persuasively rebutted the presumption of prejudice.  Consequently, the fourth *Barker* factor weighs against the conclusion that Pineda's right to a speedy trial was violated.

### 5.  Balancing the *Barker* Factors

Now that we have addressed the four *Barker* factors, we must balance them.  Weighing in favor of concluding Pineda's right to a speedy trial was violated is the excessive delay. Weighing against concluding Pineda's right to a speedy trial was violated is the State's reason for the delay, Pineda's acquiescence to the delay, and the State's persuasive rebuttal of the presumption of prejudice.  We conclude the four *Barker* factors, when balanced together, weigh against the conclusion that Pineda's right to a speedy trial was violated.

Issue one is decided against Pineda.

### III.  CONCLUSION

The trial court did not err when it denied Pineda's motion to dismiss the case due to the violation of his right to a speedy trial.

The trial court's final judgments are affirmed.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

Do Not Publish
Tex. R. App. P. 47
140632F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

EDWIN PINEDA, Appellant

No. 05-14-00632-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law
No. 4, Collin County, Texas
Trial Court Cause No. 003-81224-09.
Opinion delivered by Justice Lang. Justices
Stoddart and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 21st day of July, 2015.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

EDWIN PINEDA, Appellant

No. 05-14-00633-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 4, Collin County, Texas
Trial Court Cause No. 003-81225-09.
Opinion delivered by Justice Lang. Justices Stoddart and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 21st day of July, 2015.